Peterson *vs*. Sentman.

(Decided 19th December, 1872.)

### PETER PETERSON *vs*. SARAH SENTMAN.

*Slander—Declaration—Colloquium—Innuendo.*

Charging a person with keeping "a bad house," is not in itself actionable. The words do not necessarily imply "a bawdy house;" they may mean a disorderly house, or one that is dirty, or comfortless. To render them the foundation of an action for slander, as having been used in the sense of "a bawdy house," the declaration must set out such a statement of circumstances under which they were used, or of the subject matter of the conversation, as will indicate that they were applied in that sense. But this must be done through a *colloquium* and not by way of *innuendo*.

Unsupported by the necessary allegations of a *colloquium*, the *innuendo* can never be taken to expand or enlarge the meaning of the words used, and give to them a particular meaning, different from that in which they would be ordinarily understood in their more innocent signification.

Words that are not actionable *ex vi termini*, cannot be made so by an *innuendo*, but must be aided by a proper averment and *colloquium*, which will warrant the explanatory meaning given them by the *innuendo*.

Peterson *vs.* Sentman.

APPEAL from the Circuit Court for Harford County,

This was an action of *slander* brought by the appellee against the appellant in the Circuit Court for Cecil County, and removed at the instance of the latter to Harford County. The declaration averred:

For that, whereas, the said plaintiff is a good, honest, true and faithful citizen of the State of Maryland, and as such hath always behaved and conducted herself. And for that, whereas also the plaintiff is a *fème sole*, and a housekeeper, and hath always been a virtuous, modest and chaste citizen, and until the committing of the grievances hereinafter mentioned, had always been esteemed to be of unblemished reputation, and that before and at the time of the committing of the said grievances, she, the said plaintiff, enjoyed the society, conversation and friendship and countenance of all good, worthy and estimable citizens of the said State, and lived and associated with them on terms of mutual confidence, esteem, &c.

Yet, the said defendant, well knowing the premises and envying the happiness of the said plaintiff, and maliciously contriving and intending to injure and ruin her in her character, and to deprive her of the good will, society, conversation, friendship and commerce of the good citizens of said State, and especially to injure her in her character for chastity, virtue and modesty in the estimation of all good citizens of said State, and particularly in the estimation of all good citizens of the community where she resides and maintains her household, to wit: On the — day of ——, A. D. 186–, at the county and State aforesaid, in a certain discourse which he, the said defendant, then and there had in and about the plaintiff's character and reputation for chastity, in the presence and hearing of divers good and worthy citizens of said State of Maryland, to the said plaintiff, and of and concerning said plaintiff, in the presence and hearing of said citizens, falsely and maliciously spoke to her, and

published to, of and concerning her, the said plaintiff, then and there being a *féme sole*, the several false, scandalous, malicious and defamatory words touching her character and reputation for chastity, and tending to the injury thereof, following, that is to say: "You" (meaning the plaintiff) "are a bad woman, and keep a bad house, and I can prove it," meaning thereby to charge that the plaintiff was not a chaste woman, was a whore, and kept a common bawdy house.

And for that in a conversation concerning the chastity of the plaintiff, the said defendant falsely and maliciously spoke and published of the said plaintiff, then and now being a *féme sole*, the words touching the character for chastity of the said plaintiff, being a *féme sole*, and tending to the injury thereof, following that is to say; "You" (meaning the plaintiff) "are a bad woman, and keep a bad house, and I can prove it," meaning thereby and intending to assert and to be so understood, that the plaintiff was an unchaste woman and kept a bawdy house.

And for that the said defendant falsely and maliciously spoke and published of the said plaintiff then and now being a *féme sole*, the words touching the character and reputation for chastity of the plaintiff, being a *féme sole*, and tending to the injury thereof, following, that is to say: "She" (meaning the plaintiff) "was an ornary" (meaning ordinary) "whore and kept an ornary house for ornary men to go to," meaning thereby that she kept a bawdy house.

Whereby the plaintiff hath sustained damage and claims therefore ten thousand dollars.

To this declaration the defendant pleaded not guilty, and two special pleas in justification. Issue was joined on the first plea; and the plaintiff, demurred to the special pleas in justification; the Court sustained the demurrer. The defendant then pleaded five pleas, the first

not guilty, on which issue was joined, and the others in justification ; the second plea was as follows :

And for a further plea in this behalf the defendant saith that the plaintiff ought not to have and maintain her said action against him, because he says that before the speaking and publishing of the said words, of and concerning the said plaintiff, in the said declaration mentioned, to wit, on the first day of January, 1860, and from that time until the first day of April in the year 1866, the said plaintiff was living in a certain house of her father, situated in Cecil County, and that during the time aforesaid, to wit, on the first day of September, in the year 1865, and on the first day of January, in the year 1866, and on the fifth day of February, in the year 1866, and on divers other days and times during the period aforesaid, while she was living as aforesaid at the house of her father, the said plaintiff then and there permitted a certain Elisha Brown and a certain David Moore, and divers other male persons, to take and use improper, lewd and indecent liberties and familiarities with her, and with them indulged in improper, lewd and indecent conduct, and then and there had criminal inter-course and carnal connection with them ; wherefore the defendant saith that he well might and did speak and publish the said words in plaintiff's declaration alleged, of and concerning the said plaintiff, meaning thereby, as the said plaintiff hath alleged, and that the said words and the said meaning thereof were true, because he says the same were spoken of and concerning the said liber-ties, familiarities and lewd and improper conduct by her then and there permitted and indulged in, and her said criminal intercourse and carnal connection with said David Moore and with divers other persons at the times and place aforesaid.

The third plea was pleaded to the *first* count of the declaration, and averred that the plaintiff ought not, by

reason of anything in the first count of her declaration
alleged, to have or maintain her action against him,
because, that before the speaking and publishing of the
words in said count mentioned, of and concerning the
plaintiff, she permitted the same lewd and indecent
familiarities and indulged in the same criminal inter-
course; the plea then concluded as follows: Wherefore
the defendant says he well might and did speak and pub-
lish the said words in said first count mentioned, of and
concerning the said plaintiff, and he avers that the said
words so spoken by him were true, and that he did mean
thereby to say that the plaintiff was not a chaste woman,
but that he did not mean thereby that she kept a com-
mon bawdy house.

The fourth and fifth pleas were similar to the third,
being pleaded, the one to the *second* count of the declara-
tion, and the other to the *third*. To these pleas of justi-
fication the plaintiff demurred and the Court sustained
the demurrer. The defendant thereupon pleaded five
new pleas, on which issue was joined.

At the trial the plaintiff proved that the defendant had
spoken the words as alleged in the first and second counts
of the declaration, and with a slight difference those as
alleged in the third count.

The defendant offered evidence to sustain his pleas of
justification.

*First Exception.*—The defendant proved by Alameda
Peterson, that she had seen the plaintiff and Elisha P.
Brown *in bed together more than once, in the plaintiff's
room*—that she had never seen them in bed together in
Brown's room; that she had seen David Moore in bed
with the plaintiff *once;* that when he jumped in the bed,
he broke the bed rail; that *she and her sister* went into
the plaintiff's room and saw her and Brown in bed to-
gether, and that she sometimes slept with the plaintiff
when Brown was there. The witness said she told her

mother about the breaking of the bed rail, at the time, but did not tell of the other occurrences until some time in March, 1866.

To impeach the witness, proper foundation having been laid by specific questions, the plaintiff proved that the witness had sworn under a commission in this case, that *no one was present* when she saw the plaintiff and Brown in the same bed; that she told her mother of the occurrence as soon as she went home, a day or two afterwards; that it was the only time she ever saw the plaintiff and Brown occupy the same chamber, or sleep in the same bed; that she had seen Moore and the plaintiff in bed together several times, &c.

The defendant thereupon, to corroborate the witness, offered to prove by Adelia Peterson, her mother, that the occurrence in which the bed rail was broken was communicated to her by the witness in 1865, while she was living at the house of her grandfather, but that the other occurrences were not communicated to her until sometime in March, 1866. To this corroborating testimony the plaintiff objected, and the Court sustained the objection. The defendant excepted.

*Second Exception.*—The plaintiff prayed the Court to instruct the jury as follows:

1. That if the jury shall find from the evidence, that the defendant spoke and published of and concerning the plaintiff, the words charged in the declaration; in ascertaining the meaning of such words, they must construe them in the sense in which hearers of ordinary and reasonable understanding would ascribe to them, and in which they are most likely to be understood by the hearers.

2. That if the jury shall find from the evidence, that the defendant spoke and published of and concerning the plaintiff, the words alleged in the declaration, or in any one of the counts thereof, and that at the time of such

speaking the plaintiff was a *féme sole*, then the plaintiff is entitled to recover, unless they shall also find from the evidence that the plaintiff had carnal connection with Elisha P. Brown and David Moore, or either of them, as alleged in the defendant's plea of justification.

3. That if the jury shall find from the evidence, that the defendant spoke and published of and concerning the plaintiff, the words alleged in the declaration, or in any of the counts thereof, and that such words would naturally and most likely be understood by hearers of common and reasonable understanding, to mean that the plaintiff kept a bawdy-house, then the plaintiff is entitled to recover, although the jury should also find from the evidence that the plaintiff had carnal connection with Elisha P. Brown and David Moore, or either of them, as charged in the defendant's plea of justification.

4. That if the jury shall find from the evidence, that the words alleged in the declaration, or in any of the counts thereof, in the sense ascribed to them by the plaintiff, were spoken and published of and concerning the plaintiff by the defendant, and that, at various other times, the defendant spoke other words of like import of her, then the plaintiff is entitled to recover, and the jury may give exemplary damages, unless the jury shall be satisfied from the evidence that the defendant's plea of justification is true.

5. That if on the whole evidence, the jury shall find for the plaintiff, they may give compensatory and punitive damages.

And the defendant offered the following prayers:

1. That the plaintiff is not entitled to recover in this action, unless the jury find from the evidence that the defendant spoke the words charged in the declaration, or in some one of the counts, and that he spoke them with the meaning affixed to them in the plaintiff's declaration, or that he was or intended to be so understood.

Peterson *vs.* Sentman.

2. That if the jury find that the defendant did not speak, of and concerning the plaintiff, the words stated in the declaration to have been spoken by him, meaning thereby that she kept a bawdy-house, and also find that she was unchaste, they must find their verdict for the defendant.

3. If the jury find from the evidence that the defendant spoke and published, of and concerning the plaintiff, the words alleged in the declaration, and that he meant thereby that she was unchaste, and also find that the plaintiff had carnal connection with Elisha P. Brown or David Moore, as stated in the defendant's plea of justification, and was unchaste, she is not entitled to recover in this action.

4. If the jury find that the defendant spoke and published, of and concerning the plaintiff, the words alleged in the declaration, and that he meant thereby that she was unchaste, and also find that she had carnal connection with Elisha P. Brown or David Moore, as stated in the defendant's plea of justification, and was unchaste, she is not entitled to recover, unless the jury find that in speaking said words the defendant meant to charge that she kept a bawdy-house or was so understood by those who heard them.

5. That in finding the meaning proper to be attached to the words charged in the declaration to have been used by the defendant, and which the jury may find were spoken by him, the jury must give to such words their ordinary meaning, in their common acceptation, and if they may be understood in a sense not criminal, they must be so interpreted, unless the jury find from the words themselves or from the evidence in the case, that they were meant by the defendant in the sense in which the plaintiff has averred they were spoken or were so understood by those who heard them.

6. That in finding the meaning of the words charged in the declaration, which the jury may find were spoken

by the defendant, the jury cannot attach to them any meaning which they do not themselves import, in their ordinary sense, because other words spoken by the defendant on other occasions may import such meaning.

7. That the words charged in the plaintiff's declaration to have been spoken by the defendant, of and concerning the plaintiff, do not of themselves import, that she kept a bawdy-house.

8. That it is not necessary for the defendant, in order to maintain his plea of justification, to prove by direct evidence that the plaintiff had carnal connection with Brown or Moore, but it is sufficient if the jury find such fact from evidence in the cause, sufficient to satisfy a reasonable mind, and that the allegation is substantially true.

9. That even if the jury should find that the defendant's plea of justification is not fully sustained by the evidence, but find that some of the facts relied upon in said plea are true, or that the defendant had reasonable grounds to believe and did believe that the words spoken were true as alleged, the jury may consider such finding in estimating damages.

The Court (GRASON and BATEMAN, J.) granted the prayers of the plaintiff, and rejected those of the defendant, except the eighth, which they granted with a modification as follows:

8. That it is not necessary for the defendant, in order to maintain his plea of justification, to prove by direct evidence that the plaintiff had carnal connection with Brown or Moore, but if the jury shall find from all the facts and circumstances offered in evidence that the plaintiff had carnal connection with Brown or Moore, their verdict must be for the defendant on the plea of justification.

The defendant excepted to the ruling of the Court in rejecting his prayers, and in granting those of the plain-

tiff. The jury rendered a verdict in favor of the plaintiff for $3,683, and judgment was entered for the same, with costs. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*James T. McCullough* and *Henry W. Archer*, for the appellant.

The demurrers should all have been overruled, because, in fact, the plaintiff committed the first error in pleading, the *nar.* itself being bad.

The charge of keeping a bawdy house is not set forth properly in the *nar. Gould's Pleading, Chap.* 4, *sec.* 2; *Coke Lit.,* 304, *a*; *Wharton's Amn. Cr. Law, sec.* 2392; 1 *Hilliard on Torts,* (*3d Edition,*) *pp.* 370 *and* 371, *sec.* 25, *and note a; State vs. Evans,* 5 *Iredell,* 603; *Dodge vs. Lacey,* 2 *Carter,* 212; *Hogan vs. Wilmoth,* 16 *Grattan,* 80, 92; *Lukehart vs. Byerly,* 53 *Pa. State Rep.,* 418; *Herst vs. Borbridge,* 57 *Pa. State,* 62, 64; *Emory vs. Prescott,* 54 *Maine,* 389; *Patterson vs. Wilkinson,* 55 *Maine,* 42, 45.

The words alleged to have been used by the defendant, do not of themselves imply that such a house was kept by the plaintiff. Nor are sufficient facts set forth in the *colloquium* to show that the words charged to have been used by the defendant referred to the plaintiff as a keeper of a bawdy house, but only as to her character for chastity. *Van Vechten vs. Hopkins,* 1 *Amer. Leading Cases,* 137, 142; *Commonwealth vs. Snelling,* 15 *Pickering,* 321, 335; *Dorsey vs. Whipps,* 8 *Gill,* 457; *Snell vs. Snow,* 13 *Metcalf,* 278.

Adelia Peterson's testimony should have been allowed to corroborate that of her daughter Alameda. The testimony of the latter before the Commissioner was read only for the purpose of impeaching her credibility. That the

Court erred in refusing this corroborating testimony, appears from the following cases : *Cooke vs. Curtis et al.*, 6 *H. & J.*, 93; *Washn. Fire Insurance Co. vs. Davison & Symington*, 30 *Md.*, 93.

The prayers offered by the defendant should have been granted. They are based upon the principle, which is believed to be correct, that the defendant is only liable for the words spoken by him in the sense in which he used them, or in which they were in fact understood by those who heard them. And that if the jury should find that they were true in the sense and meaning with which they were spoken, and were in fact so understood, he is not liable at all. 1 *Hilliard on Torts*, 310, 311 ; *McGough vs. Rhodes*, 7 *Eng.*, (*Arkansas*,) 625 ; *Commonwealth vs. Kneeland*, 20 *Pick.*, 216 ; *Sasser vs. Rouse*, 13 *Iredell*, 142.

The defendants third and fourth prayers should have been granted for another reason. The plaintiff's declaration is only good so far as it charges the defendant with having impugned her character with chastity ; and these prayers in substance assert, that if the words spoken were true, so far as they affected her character for chastity, she was not entitled to recover. *Van Vechten vs. Hopkins*, 1 *Am. L. Cases*, 137, 142; *Dorsey vs. Whipps*, 8 *Gill*, 457.

In support of the defendant's sixth prayer. *Van Vechten vs. Hopkins*, 5 *Johns.*, 211, was relied on ; and in support of the defendant's seventh prayer, the following authorities were referred to : *Wagamun vs. Byers*, 17 *Md.*, 183 ; *State vs. Evans*, 5 *Iredell*, 603 ; *Wharton's Cr. Law*, sec. 2392.

In support of his ninth prayer, the appellant referred to the following : *Duncan vs. Brown*, 15 *B. Mon.*, 186 ; *Landes vs. Sharklin*, 1 *Smith*, 78 ; *Morehead vs. Jones*, 2 *B. Mon.*, 210 ; *Rigdon vs. Wolcott*, 6 *G. & J.*, 413; *Wagner vs. Holbrunner*, 7 *Gill* 300 ; *Shilling and Wife vs. Car-*

son, 27 *Md.*, 175 ; *Shoulty vs. Miller.* 1 *Carter's Ind. Rep.*, 541 ; *Byrket vs. Monohon,* 7 *Blackfd.* 83 ; *West vs. Walker,* 2 *Swan,* 34. ·

The plaintiff's first prayer is objectionable because it instructs the jury to construe words, not in themselves, actionable, in the sense in which the hearers were most likely to understand them, without regard to how they were in fact understood, or how they were intended.

The plaintiff's third prayer is objectionable, because it authorized the jury to find a verdict for the plaintiff, although they might find that the defendant only meant to charge that she was unchaste, and was so understood by those who heard him ; and although they might also find that the charge as meant and understood was true.

The prayer is also objectionable, because it authorized the jury to find that the defendant charged the plaintiff with keeping a bawdy house. There is no *colloquium* in the *nar.* in regard to the character of the house kept by the plaintiff, and the words alleged, not having been so actionable, their meaning cannot be extended by the *innuendo. Commonwealth vs. Snelling,* 15˚ *Pick.* 335 ; *Dorsey vs. Whipps,* 8 *Gill,* 457 ; *Van Vechten vs. Hopkins,* 1 *Amn. L. Cases,* 137, 142.

The plaintiff's fourth prayer is objectionable, because it gives undue force and effect to " other words of like import spoken at other times." Such words may be admissible in proof of malice, but cannot be used to vary or extend the meaning of the words alleged in the declaration, nor in aggravation of damages. *Van Vechten vs. Hopkins,* 1 *Amn. L. Cases,* 137, 142 ; 1 *Hilliard on Torts,* 355. sec. 7 ; *Keenholts vs. Becker,* 3 *Denio,* 346 ; *Forbes vs. Myers,* 8 *Black.,* 74 ; *Goslin vs. Corry,* 7 *Man. & Gra.,* 343.

*Henry D. Farnandis,* for the appellee.

A plea of justification must state specific facts, conform to the *nar.*, and meet the whole charge. 1 *Chitty's*

*Plead.,* 495. It must justify the charge in its full legal sense, and in the sense given by the plaintiff. 1 *Hilliard on Torts*, 436, 441, 444. It is not enough to justify the sentiment contained in the words. *Howard vs. Thompson*, 1 *Amn. Lead. Cases*, 163, (*marg.*)

The evidence offered by the defendant to corroborate the witness Alameda Peterson was inadmissible. *Rex vs. Parker*, 3 *Douglas*, 242, 244 ; *Cooke vs. Curtis*, 6 *H. & J.*, 93 ; *Washington Fire Insurance Co. vs. Davison & Symington*, 30 *Md.*, 92. The defendant could sustain no injury by its exclusion.

In support of his first prayer, the appellee relied on 2 *Greenleaf on Ev.*, 417, *note; Garrett vs. Dickerson*, 19 *Md.*, 418, (447.) The second cannot be objected to on the defendant's theory. To support his third prayer, the appellee referred to 2 *Greenleaf on Ev. sec.* 417; *Howard vs. Thompson*, 1 *Am. Leading Cases*, 163, (*marginal*). To sustain his fourth prayer, the following cases were relied on. *Rigden vs. Wolcott*, 6 *G. & J.*, 413 ; 1 *Hilliard on Torts*, 355, *s.* 7 ; *Botelar vs. Bell*, 1 *Md.*, 173. To sustain his fifth, he referred to *Wilms vs. White*, 26 *Md.*, 389, 390.

The defendant's prayers were properly overruled. *Hilliard on Torts*, 425, *s.* 26, 410, *sec.* 6 *and note a ; sec.* 428, *sec.* 423, *sec.* 25 *and note; Van Vechten vs. Hopkins*, 1 *Am. Leading Cases*, 137, 140 ; *Stephens' N. P.*, 2552 ; *Woolnoth vs. Meadows*, 5 *East.*, 473 ; *Blagg vs. Stuart*, 10 *Adolph & Ellis*, 899.

BRENT, J., delivered the opinion of the Court.

The first and principal question presented upon this appeal, is one of pleading. The declaration after averring that the plaintiff is a *féme sole*, and a housekeeper, and has always been a virtuous, modest and chaste citizen, &c., alleges that in a certain discourse in and about the plaintiff's character and reputation for chastity, the

defendant falsely, scandalously and maliciously spoke and published of her character and reputation for chastity, the following words: "you," (meaning the plaintiff,) "are a bad woman, and keep a bad house, and I can prove it," meaning thereby to charge that the plaintiff was not a chaste woman, was a whore, and kept a common bawdy house."

The same allegations are substantially made in the other two counts in the declaration, and what is said of the first, will equally apply to them.

It is contended by the defendant, that the declaration contains no sufficient *colloquium* to support and warrant an *innuendo*, that in saying the plaintiff kept a "bad house," the defendant meant thereby to charge, that she "kept a common bawdy house," and in this view we concur.

Charging a person with keeping a "bad house" is not in itself actionable. The words, however objectionable they may be, admit of other constructions, which readily suggest themselves to the mind, than that given to them by the plaintiff. To say that a person keeps a bad house may mean a disorderly house, or one that is dirty or comfortless. So indefinite is their meaning, that to render them the foundation of an action like the present, the declaration must set out such a statement of circumstances under which they were used, or of the subject matter of the conversation, as will indicate that they were applied in a sense imputing to the plaintiff the wrong complained of. But this, under a rule of pleading firmly established by all the authorities, must be done through a *colloquium* and not by way of *innuendo*, the only object of which is to point to and explain what has before been introduced in the declaration. Unsupported by the necessary allegations of a *colloquium*, the *innuendo* can never be taken to expand or enlarge the meaning of the words used, and give to them a particular meaning,

different from that in which they would be ordinarily understood in their more innocent signification. Words will not be construed to impute a crime, if in their milder sense they have another and more harmless meaning, unless the connection in which they are used and applied would give to them that effect. The office of the *colloquium* and *innuendo*, in actions of this description, is very satisfactorily stated in the case of *Van Vechten vs. Hopkins*, 5 *Johns. R.*, 211, (1 *Amer. L. C.*, 117.) In illustrating the proper office of these distinctive parts of a declaration, the Court refer to *Barham's Case*, 4 *Coke's R.*, 20, and say of it—"Barham brought an action for the defendant's saying of him, ' Barham burnt my barn,' (*innuendo*) ' a barn with corn.' The action was held not to lie; because burning a barn, unless it had corn in it, was not felony." "But," says DE GREY, C. J., in *Rex vs. Horne*, (3 *Cowp.*, 184,) "if in the introduction it had been averred that the defendant had burnt a barn full of corn, and that in a discourse about that barn the defendant had spoken the words charged in the declaration, an *innuendo* of its being the barn full of corn would have been good; for by coupling the *innuendo* in the libel with the introductory averment it would have been complete." "Here the extrinsic fact, that the defendant had a barn full of corn, is the averment. The allegation that the words were uttered in a conversation in reference to that barn is the *colloquium*, and the explanation given to the words thus spoken is the *innuendo*."

In the case before us, the declaration is wholly silent, in its introductory part, as to any house of the plaintiff. There is an averment that the plaintiff was a housekeeper, but it is no where alleged, by way of *colloquium*, that the house in which she lived, or its character as kept by her, was the subject of conversation, or the particular object referred to by the defendant, when he used the terms "bad house" and "*ornary* house." The

words "you keep a bad house" are not actionable, and cannot be made so by an *innuendo* unless properly introduced by a *colloquium.*    In the case of *Snell vs. Snow*, 13 *Metc.*, 278, the declaration charged the defendant with falsely and maliciously saying of the plaintiff, "she is a bad girl, a very bad girl," *innuendo,* "that she was a prostitute and had committed the atrocious crime of fornication."    The declaration was held to be insufficient because it did not contain the necessary averments and *colloquium* to warrant the *innuendo.*    A very similar case to the present is that of *Dodge vs. Lacey*, 2 *Cart. Reps.*, 213, decided by BLACKFORD, J.    In that case the declaration charged the defendant, in a conversation concerning the character of the plaintiff for chastity, with falsely and maliciously saying and publishing of her, that she kept "a public house (meaning a bawdy-house)."    The Court held the declaration was defective, upon the ground that there was no sufficient *colloquium* to justify the *innuendo.*    Authorities upon this point could be cited to a very large number, but it is unnecessary, as they all concur in the inflexible rule, that words that are not actionable *ex vi termini* cannot be made so by an *innuendo,* but must be aided by a proper averment and *colloquium,* which will warrant the explanatory meaning given them by the *innuendo.*

The rule may be a strictly technical one, and may operate harshly in its application to this case, but it is too firmly established to be departed from.    And under it we hold it to be clear, that there is no sufficient allegation in the declaration before us, requiring the defendant to answer to the charge of having said of the plaintiff that she kept a bawdy-house.    We do not however mean that the declaration is wholly bad.    The charge that the plaintiff was unchaste is sufficiently set forth, and in this respect the declaration is a good one.    But the absence of any sufficient allegation in regard to the character of the

plaintiff's house materially affects the pleas of the defendant and the third instruction granted by the Court. The first set of special pleas filed by the defendant were not insisted upon at the argument: The demurrer to them was properly sustained. But it follows from what we have said in regard to the declaration, that the second plea, of those secondly pleaded, is a good plea of justification, and the demurrer to it ought to have been overruled. The third instruction was also improperly granted, as it rests entirely upon the assumption that the declaration charges the defendant with saying of the plaintiff that she kept a bawdy-house. For these reasons the judgment of the Court below will be reversed.

There are other questions presented in this case, which it is unnecessary for us to examine at length. We will however add that the rulings of the Court below upon them were correct, except in so far as they are modified by what we have already said.

*Judgment reversed and*
*new trial ordered.*

(Decided 19th December, 1872.)