# EDWIN P. BAUGH

*vs.*

# EDWIN C. MOORE.

*Slander*: *pleading; demurrer; effect of—; innuendo and col-*
*loquium; purpose and effect; letter to discharged servant*
*demanding return of property. Em-*
*bezzlement; definition.*

A demurrer to a declaration in an action of slander admits
the words declared on were spoken by the defendant, and that
they were false and malicious; but it does not admit that the
words in themselves are actionable *per se,* and does not admit
that, read by themselves or in connection with the colloquium,
they have the meaning ascribed to them in the innuendo.  p. 153

The office of the innuendo is to explain the words of the
alleged slander and give them their true meaning.          p. 153

The innuendo can not introduce new matter or enlarge or
add to the sense of the words declared on, or impute to them a
meaning not justified, when taken alone, or in connection with
the inducement and colloquium.                             p. 153

Embezzlement is the fraudulent appropriation of personal
property by the person to whom it had been entrusted.    p. 154

An important ingredient of the offense is the *animus furandi,*
the intent to deprive the owner of his property.           p. 154

In an action of slander, words will not be understood to im-
pute a crime, if in their milder sense they have another and a
harmless meaning, unless the connection in which they are used
and applied would give them such a criminal significance.

p. 154

A letter was dictated by an employer to a stenographer and
sent to a superintendent, whom the employer had dismissed,
demanding the return of certain articles which the employer
supposed were in the possession of the former employee; the
letter was made the basis of a suit for slander, the innuendo
being that the defendant meant "that the plaintiff had been

guilty of embezzlement." *Held,* that even if the words were susceptible of such an interpretation, they were also capable of being regarded as an ill-tempered demand for the return of certain property supposed to be in the possession of the party on whom such demand was made, without charging him with any *animus furandi,* and as the proof failed to establish any actionable meaning of the words used, it was further *held,* that there was no question presented which should be allowed to go to the jury.                                                    p. 155

*Decided December 19th, 1913.*

Appeal from the Superior Court of Baltimore City (HEUISLER, J.).

This appeal arose from an action of slander brought against the defendant because of language used in the following letter which was dictated by the defendant to a hotel stenographer and sent to the plaintiff:

"Baltimore, June 22, 1911.

"*Edwin C. Moore*—Sir:

"In looking over your accounts (all of which are utterly useless, as nothing can be made out of the cost of running the place, you have mixed up your personal accounts with mine); and in cheque stubs, I notice you have given some woman my check, which looks very strange going through the bank, to say the least. I want an explanation of this. You have evidently used my cheques for personal use. What do you mean by such impertinence?

"The books you started, some of which have not had an entry since January, are simply a waste of books and time. The ledger I gave you has not been returned; also passbooks, the check book, keys of house you occupied, etc. By what right did you tear out the unused checks? If you have them instantly return them and the deposit book. Also my stationery you took with you.

"I was very much surprised when looking for wire cutters to hear that you had taken mine from the

farm. Your inventory is not complete. You say—— 'and various other small tools too numerous to mention.' There are scarcely any small tools on the place. I don't know what you did with them, but I gave you the money for them. Rubber boots, coats, etc., have all disappeared—after costing me in the neighborhood of $5,000, and giving the place a bad name through your gross incompetency and neglect—to walk off with my property, even if it is a sheet of paper, I won't stand; and I want everything belonging to me instantly returned.

"You are the first person I have ever had in my employ that has not brought the inventory and his accounts to go over with me to prove that they were right before leaving. You did not do this. The inventory is not of what is on the place, but rather of what should be on the place. I now understand why you did not bring your accounts, etc., etc., to me. Your immediate attention to returning my property will oblige,

Yours truly,

"Kindly answer instantly, or I shall put the case in my attorney's hands."

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Arthur R. Padgett* and *John Philip Hill,* for the appellant.

*Emmet Wallace White,* for the appellee.

Stockbridge, J., delivered the opinion of the Court.

This suit, as originally instituted, contained two counts, the first in slander, and the second in libel. By the ruling of the Court below the count in libel was withdrawn from the consideration of the jury, and is not involved in this appeal. The present suit, therefore, is simply an action for slander, based upon the first count of the declaration, and arises out of the following circumstances:

In the latter part of 1910 the appellee was employed by the appellant as manager of the latter's farm in Anne Arundel County, and continued as such during the ensuing winter, but in May, 1911, was discharged by the appellant. About a month after the termination of this employment, Mr. Baugh, the appellant, being at an hotel in Baltimore, dictated to a public stenographer in the hotel a letter, which he mailed Moore, the appellee, and some of the language in which constitutes the alleged slander, the alleged slanderous words being:

"There are scarcely any small tools on the place. I don't know what you did with them; but I gave you the money for them. Rubber boots, coats, etc., have all disappeared—after costing me in the neighborhood of $5,000.00, giving the place a bad name through your gross incompetency and neglect—to walk off with my property, even if it is a sheet of paper, I won't stand; and I want everything belonging to me instantly returned. You are the first person I have ever had in my employ that has not brought the Inventory and his accounts to go over with me to prove they were right before leaving. You did not do this. The Inventory is not of what is on the place, but rather of what should be on the place. I now understand why you did not bring your accounts, etc., to me."

Following the language quoted in the *narr.* is the *innuendo,* "meaning thereby that the said plaintiff had been guilty of embezzlement". A general demurrer was filed to the declaration, which was overruled. The demurrer of course admits that the words were written by the defendant, and that they were false and malicious, but it does not admit that the words in themselves are actionable *per se,* nor does it admit that they are, when read by themselves, or in connection with the colloquium capable of the meaning ascribed to them in the *innuendo.* If it be conceded that the words as interpreted by the *innuendo* are actionable, the question whether

the *innuendo* is good, that is to say, whether it is fairly warranted by the letter when read in connection with the inducement and colloquium still remains as a matter of law for the Court. It is the office of the *innuendo* to explain the words of the alleged slander and to give them their true meaning. It can not, however, introduce new matter or enlarge or add to the sense of the words declared on, or properly impute to them a meaning not justified, either when taken alone or in connection with the inducement and colloquium. *Lewis* v. *News Co.,* 81 Md. 466; *Dorsey* v. *Whipps,* 8 Gill, 462; *Haines* v. *Campbell,* 74 Md. 158; *Avirett* v. *State,* 76 Md. 510; *Barnes* v. *State,* 88 Md. 347; *Goldsborough* v. *Orem,* 103 Md. 681; *Weeks* v. *News Pub. Co.,* 117 Md. 126.

Taking the language as used in the declaration, together with the admissions necessarily made by the demurrer, and the allegation that the plaintiff had been injured thereby, the demurrer was properly overruled.

The case then proceeded to trial. The sole exception reserved was the exception of the defendant to the ruling of the Court on the prayers, and the important ruling was the refusal of the defendant's first prayer, by which the Court was asked to instruct the jury that the plaintiff was not entitled to recover. As a part of the proof of the plaintiff's case, he had offered in evidence the letter, a portion of which had been selected and declared on in the *narr* as constituting the alleged slander. From that it appears that immediately following the language declared on, is this sentence: "Your immediate attention to returning my property will oblige, yours truly. Kindly answer instantly or I will put the case in my attorney's hands."

By the language which was quoted in the *narr.* as explained by the inuendo, it was averred that the appellee was charged with the crime of embezzlement, which is the fraudulent appropriation of property by a person to whom it has been entrusted, and is sometimes said to be a species of larceny. *Black's Law Dic.* 419.

The important ingredient of the offense is the intent to deprive the owner of his property, an intent which the language of the letter in demanding the return of his property seems to negative. The words, even if susceptible of being regarded as imputing embezzlement, were also capable of being regarded as an ill-tempered demand for the return of certain property supposed to be in the possession of the party on whom the demand was made, without charging him with the *animus furandi.*

In *Peterson* v. *Sentman,* 37 Md. 140, this Court has said: "Words will not be understood to include a crime, if in their milder sense they have another and harmless meaning, unless the connection in which they are used and applied would give them that effect." And in the first volume of *Poe on Pleading and Practice,* sec. 173 (3rd ed.), that author says: "Words take their actionable character from the sense in which they appear to have been used and that in which they are likely to be understood."

This rule has been distinctly recognized in *Brinsfield* v. *Howeth,* 107 Md. 278, and *DeWitt* v. *Scarlett,* 113 Md. 47; and in the most recent case where the entire subject was elaborately considered, and all of the authorities carefully reviewed, *Weeks* v. *News Pub. Co.,* 117 Md. 126, it was said: "Where the words are ambiguous or have an actionable and non-actionable meaning, the actionable character sought to be given them in the innuendo, that is to say, the sense in which the plaintiff avers they were used must be supported by such an averment and colloquium as will warrant the defamatory meaning ascribed to them in the innuendo."

*A fortiori* where the proof has been introduced and the language of the entire statement fails to warrant the defamatory meaning attempted to be ascribed in the declaration, the actionable character of the language fails, and the case is properly to be withdrawn from the consideration of the jury.

It was, therefore, error to have refused the defendant's first prayer. The view taken of the language being as already set

forth, it becomes unnecessary to discuss the other points in the case argued by counsel for the parties.

The judgment will accordingly be reversed.

*Judgment reversed without a new trial.*

---

A motion for reargument having been made in this case, the record, briefs and motion have been examined with care. In the opinion heretofore filed it was said: *"if it be conceded* that the words as interpreted by the *innuendo* are actionable, the question whether the *innuendo* is good * * * still remains a matter of law for the Court. * * * Taking the language as used in the declaration, together with the admissions necessarily made by the demurrer, and the allegation that the plaintiff had been injured thereby, the demurrer was properly overruled."

The opinion, therefore, proceeded upon the theory of a concession of the actionable character of the language. The motion filed raises even more sharply than the original briefs the actionable nature of the language as set forth in the declaration. The alleged slanderous words were fully set forth in the opinion filed in this case, and need not be again repeated, nor is it necessary to again quote from the cases as to what does and what does not constitute slanderous language for which an action will lie. That has been fully settled in this State by such cases as *Brinsfield* v. *Howeth,* 107 Md. 278; and *Weeks* v. *News Pub. Co.,* 117 Md. 126. If the language used in the letter of Mr. Baugh to the appellee is examined in the light of these cases and applying the rule laid down in *Peterson* v. *Sentman,* 37 Md. 140, it can not fairly be said that the language warrants the meaning sought to be given to it in the *innuendo,* and if the case had been presented to this Court solely upon the demurrer, we would have had to hold that the demurrer to the declaration should have been sustained. As this conclusion in no way affects the result as announced in the opinion heretofore filed, the motion for reargument will be overruled.

*Motion overruled.*