472 A.2d 98

**David Atlee PHILLIPS**

v.

**WASHINGTON MAGAZINE, INC. et al.**

**No. 631, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 8, 1984.

Certiorari Denied June 7, 1984.

**32** 

James J. Bierbower, Washington, D.C., with whom were William J. Bierbower and Bierbower & Bierbower, Washington, D.C., on brief, for appellant.

Peter F. Axelrad, Baltimore, with whom were Shale D. Stiller, Clifford C. Whitney, III, and Frank, Bernstein, Conaway & Goldman, Baltimore, on brief, for appellees.

Argued before LISS, GARRITY and GETTY, JJ.

LISS, Judge.

This appeal involves an action for libel and invasion of privacy in which the appellant, David Atlee Phillips, a retired officer of the Central Intelligence Agency (hereafter "CIA") sought to recover compensatory and punitive damages from the appellees herein, Washington Magazine, Inc., John A. Limpert, Phillip Merrill and Gaeton Fonzi.

Appellant's claim is based upon allegations contained in an article entitled "Who Killed JFK?", published in the November, 1980 issue of *The Washingtonian* magazine, a publication of Washington Magazine, Inc. The article was authored by Gaeton Fonzi. The editor and the publisher of *The Washingtonian* were John Limpert and Phillip Merrill, respectively.

On May 1, 1981, appellant filed a declaration in the Circuit Court for Montgomery County alleging libel by the appellees as a result of their publishing the aforementioned article. Fonzi filed a motion raising preliminary objection, asserting the absence of personal jurisdiction over him. That motion was denied by the trial judge. The other three defendants demurred to the declaration on October 19, 1981. After the denial of Fonzi's jurisdictional motion, Fonzi joined with the other defendants in their demurrer. The court twice sustained the demurrers but allowed Phillips to attempt to correct the defects in his declaration through amendment. In a memorandum opinion dated April 4, 1983, the trial judge sustained the demurrer to Phillips' second amended declaration, without leave to amend, on the grounds of

failure to allege actual malice and constitutional protection of opinion.

Appellant then noted this appeal, asking us to consider the following issues:

1. Whether the second amended declaration sufficiently alleged that the appellees made false and defamatory statements, with actual malice, and resulting in damage to the appellant?

2. Whether the constitutional provision for opinion protects defamatory statements?

Fonzi filed a cross-appeal, asking us to consider whether the Maryland long-arm statute confers personal jurisdiction over him.

The appellees, including Fonzi, raise an additional issue in their brief, *i.e.*, whether the appellant's case is barred by the statute of limitations.

An article entitled "Who Killed JFK?" was published in the November, 1980 issue of *The Washingtonian* magazine. The article was featured on the front cover of *The Washingtonian* with the lead-in language "No More Lies, No More Cover-Ups—This Is the True Story of My Search for WHO KILLED JFK? . . . The Trail Leads to Washington, an Elusive Spymaster Becomes the Key. . . ." The November, 1980 issue of *The Washingtonian* was first distributed and circulated to subscribers on or about October 27, 1980. At that time the appellant was a retired, decorated employee of the CIA residing in Bethesda, Maryland.

The author of the article, Fonzi, had been an investigator for two Committees of the U.S. Congress. His areas of inquiry included investigations of the assassination of President John F. Kennedy. The central scope of the article was Fonzi's efforts to locate an alleged "spymaster" named Maurice Bishop, who knew and met with Lee Harvey Oswald, and thus may have been involved in a conspiracy to assassinate President Kennedy.

The article included a caption to a photograph of Salvador Allende stating that Mr. Allende " . . . was overthrown by a

secret force from the CIA headed by David Atlee Phillips." Appellant's second amended declaration states that this accusation is false.

The article allegedly suggests that appellant, for a period of some ten years, was a spy operating under the name of Maurice Bishop. Inside the magazine was a composite sketch of Maurice Bishop, the elusive spymaster referred to throughout the article. Adjacent to the composite sketch was a photograph of David A. Phillips. Although appellant concedes that Fonzi, in his article, never stated that David Phillips and Maurice Bishop are the same person, he alleges in his second amended declaration that the organization and layout of the article—placing the composite sketch and photograph of appellant on facing pages—was an identification mechanism to connect plaintiff with defamatory references to Maurice Bishop.

Appellant concedes he is a public figure and recognizes that he must prove that the defamatory falsehood was made with actual malice, *i.e.,* with knowledge that it is false or with reckless disregard of whether it was false or not. He admits that the sole instance of actual malice upon which he relies is his perception that the other appellees in this case knew that Fonzi had fabricated the composite sketch to link Maurice Bishop to the appellant by supplying a description of the appellant to the sketch artist.

The founding fathers of this nation, in adopting the First Amendment to the Constitution, made a commitment to robust and open debate protected by the right of freedom of speech. Justice Cardozo described that freedom as "the matrix, the indispensable condition of nearly every other freedom." *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The Supreme Court recognized that freedom of speech can be chilled by expensive libel litigation, and as a result, placed a heavy burden on the public figure who seeks to pursue a libel action. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

 A public figure plaintiff in a libel or invasion of privacy[1] action must plead and prove that the communication at issue was: (1) false; (2) defamatory; (3) made with actual malice; (4) defamatory either on its face or when considered in light of extrinsic facts; and (5) injurious to the plaintiff. *Capital-Gazette Newspapers, Inc. v. Stack,* 293 Md. 528, 538–40, 445 A.2d 1038 (1982); *Metromedia, Inc. v. Hillman,* 285 Md. 161, 171–72, 400 A.2d 1117 (1979). A plaintiff must establish his case by clear and convincing evidence. *New York Times Co. v. Sullivan, supra.*

 Appellant contends that there were two defamatory charges in the article: the caption concerning the overthrow of Allende, and the purported link between Phillips and Bishop. The issue of defamation was appropriately raised by demurrer. *Flaks v. Clarke,* 143 Md. 377, 122 A. 383 (1923); *Weeks v. News Publishing Company,* 117 Md. 126, 83 A. 162 (1912). In determining whether the article was defamatory, the courts must consider the article as a whole to arrive at the true meaning of the specific words and phrases. *Baugh v. Moore,* 122 Md. 149, 89 A. 404 (1913); *Kilgour v. Evening Star Newspaper Company,* 96 Md. 16, 53 A. 716 (1902).

Maryland Rules 301 and 340 set forth the general requirements of form and content of a declaration. Rule 301(b) requires that "[a] pleading shall be brief and concise and contain only such statements of fact as may be necessary to constitute a cause of action or ground of defense, except as may otherwise be necessary for purposes of demurrers and motions...." Rule 345 a 2 sets forth the principles governing a demurrer and states "[a]ny question as to the sufficiency of substance of any pleading may be raised by demurrer."

---

1. Regardless of whether a declaration is styled as a defamation action or an invasion of privacy action, the same considerations and legal standards apply. *Harnish v. Herald-Mail Co.,* 264 Md. 326, 286 A.2d 146 (1972); *Bilney v. Evening Star Newspaper Co.,* 43 Md.App. 560, 406 A.2d 652 (1979). Thus, our discussion of Phillips' libel claim applies as well to the invasion of privacy count.

■ In ruling on a demurrer, the court is required to accept as true all well-pleaded facts and any reasonable inferences which may be drawn therefrom. *Schwartz v. Merchants Mortgage Co.,* 272 Md. 305, 322 A.2d 544 (1974); *Hooke v. Equitable Credit Corp.,* 42 Md.App. 610, 402 A.2d 110 (1979).

■ The caption about which Phillips complains states that he was the "chief" of a CIA "task force" set up "to work with Chilean military brass who opposed Allende." Phillips does not aver that the article states or even suggests that the task force acted illegally, that it conducted renegade activity against CIA orders, or even that its activities were illegal under Chilean law. Phillips admits in his second amended declaration that he was an employee of the CIA between 1950 and 1975, that he at various times in his career had been awarded special recognition for distinguished and meritorious service. When the article is read in its entirety the statement that such an agent had headed a CIA task force involved with the Chilean Brass who opposed Allende is not defamatory.

The article suggested that Phillips was acting under orders in the service of his country and at no time was charged with any wrongful conduct. The effect of the caption was substantially diminished by a prominent sidebar on the same page which stated that the overthrow "was supported and largely financed by the CIA and several multinational corporations." We conclude that so far as this complaint is concerned there is nothing pleaded in the second amended declaration that would indicate the statements made concerning Phillips' involvement in the overthrowing of the Allende regime in Chile were the products of the defendant's imagination containing defamatory material so inherently improbable that only a reckless person could have put it into circulation. There has been no fact pleaded as to this issue which indicates that the statement made was defamatory or from which actual malice is proven or may be inferred.

Appellant's second complaint as alleged in his second amended declaration was that appellees implied that Phillips in fact *was* "Maurice Bishop." Appellant reached this conclusion from his statement that the appellees deliberately juxtaposed a photograph of Phillips with a "composite sketch"—fabricated to resemble appellant—of alleged conspiratorial assassin and gun running guerilla Bishop. He also noted that Fonzi compared Phillips' physical resemblance with Maurice Bishop and wrote that there were similarities in Phillips' "character and career" with those of Bishop. Appellant in his declaration called attention to the fact that the Editor's Notes in *The Washingtonian* stated that Fonzi "suspects" appellant is Bishop. From these allegations appellant concluded that the article permitted only one conclusion, *i.e.,* that Phillips is Bishop.

Appellant concedes that nowhere in the article does Fonzi assert that Phillips is Bishop. The Editor's Notes which accompanied the publication of the article clearly stated that Fonzi suspected Phillips was Bishop but that Fonzi could not prove his suspicions. In addition, the article unequivocally stated that Antonio Veciana, who was the principal source for the information that the appellant was Maurice Bishop, was quoted as having denied repeatedly that Phillips was Bishop. In fact, the article points out that Veciana had testified under oath before a Congressional Subcommittee that Phillips was not Bishop.

The article also described in detail how the composite sketch came to be made. Veciana and Fonzi decided that a sketch of Bishop made by a police artist would assist Veciana in identifying Bishop. Fonzi gave the artist a rough description of Bishop over the phone and from this description and Veciana's knowledge of Bishop the preliminary sketch was drawn. Veciana then spent approximately two hours going through more than 300 police mug shots, selecting from the photos individual features most closely representing Bishop. The final sketch was distilled from the consideration of all the information given to the artist by Fonzi and Veciana. From these facts the appellant alleged

in his second amended declaration that based on information and belief he was convinced that the defendant Fonzi "fabricated the composite sketch to link plaintiff to Maurice Bishop by supplying a description of plaintiff to the composite sketch artist."

From our own reading of the article we conclude that the article and its references to Phillips and Bishop are not defamatory *per se.* Even if, however, the article were defamatory in its discussion of the purported relationship between Phillips and Bishop, the second amended declaration has failed to establish such facts as would amount to allegations of "actual malice" on the part of the defendants. In the recent case of *Capital-Gazette Newspapers, Inc. v. Stack, supra,* 293 Md. at 539, 445 A.2d 1038, the Court of Appeals discussed the "actual malice" standard:

> "Actual malice" can be established by showing that: a defamatory statement was a calculated falsehood or lie "knowingly and deliberately published," [Citations omitted]; a defamatory statement was the product of the publisher's imagination; a defamatory statement was so inherently improbable that only a reckless person would have put it in circulation; or the publisher had obvious reasons to distrust the accuracy of the alleged defamatory statement or the reliability of the source of the statement. . . . [Citation omitted].

The Court emphasized in *Stack, supra,* that actual malice is *not* established by a showing that the publication was erroneous, derogatory or untrue; or that the publisher acted out of ill will, hatred, or a desire to injure the plaintiff; or that the publisher acted in reliance upon the unverified statement of a third party who had no personal knowledge of the subject matter of the statement; or that the publisher acted without undertaking the investigation that a reasonably prudent person would have made. The Court also held that actual malice is not established if the publisher acted in a reasonable belief that the statement was substantially correct. *Id.,* 293 Mo. at 539–40, 445 A.2d 1038.

We have carefully read the article and considered the sketch and photograph complained of. The only allegation which could even remotely support the requirement of the allegation of facts which amount to actual malice is the bald assertion by appellant that "on information and belief, . . . defendant Fonzi fabricated the composite sketch to link plaintiff to 'Maurice Bishop' by supplying a description of the plaintiff to the composite sketch artist."

That bald allegation is refuted by the detailed exposition in the article of the detailed process by which the composite sketch came into existence. Appellant suggests that in the light of the appellees' awareness of the background of Veciana that they had a "high degree of the awareness of the probable falsity" of the connection between Phillips and Bishop. The article clearly indicates that Fonzi made extensive efforts to verify the truth of Veciana's information and his reasons for doubting Veciana's denials that Phillips was Bishop. There are no facts alleged in the second amended declaration to indicate that the investigation which resulted in the article was conducted in bad faith or related inaccurately. We cannot agree that the trial judge abused his discretion when he reached the following conclusion:

> [T]here has been nothing alleged or shown that the material was the product of the defendant's imagination, contains defamatory material so inherently improbable that only a reckless person could have put it into circulation, or that the defendants had obvious reasons to distrust the accuracy of the defamatory material or the reliability of the source of it. There has been no fact pleaded, nor is there any fact that can be pleaded from which actual malice of these defendants may be inferred.

As this was the third unsuccessful attempt of the appellant to prepare a declaration that was immune from demurrer, we do not find that the trial court erred in sustaining the appellees' demurrer without leave to amend.

Both the appellant and the appellees have prepared well reasoned briefs on the other issues raised by the parties and

at oral argument submitted persuasive arguments in support of their contentions. In the light of our decision that the appellant has failed to state a valid cause of action in his second amended declaration, it becomes unnecessary for us to decide their respective contentions on those issues.

JUDGMENT AFFIRMED, COSTS TO BE PAID BY APPELLANT.