Griffin and Wife *vs.* Moore.

(Decided 24th June, 1875.)

---

CHARLES GRIFFIN and MARY ANNE GRIFFIN, his Wife *vs.* JAMES A. MOORE.

*What words are actionable per se, and what are not— When it is too late to file the Plea of Limitations.*

Words charging a married woman with adultery are not actionable *per se.* (*Aliter*, as to charge of fornication against a *féme sole.* See Code, *Art.* 89.)

To charge a woman with keeping a bawdy house, is actionable *per se.*

In an action of slander by a married woman for words touching her character for chastity, in order to constitute the words actionable *per se*, they must impute to her an indictable offence for which corporal punishment is the immediate penalty.

At the trial of a case the plaintiffs by leave of Court amended their *narr.*, and then examined three witnesses, who were cross-examined by the defendant. The defendant then asked leave to file the plea of limitations to the amended *narr.*   HELD :

That this plea (if the amendment made it allowable,) should have been filed immediately after the amendment; and it was too late to file it after the examination of the witnesses.

APPEAL from the Baltimore City Court.

The nature of this case is stated in the opinion of the Court.

*First Exception.*—After the plaintiffs had given evidence tending to prove that about the 1st of August, 1872, the defendant sent a man to the house of the plaintiff, Mrs. Griffin, stating it to be a house of ill-fame and kept by a Mrs. Burns, a whore, the plaintiffs moved to amend their declaration by substituting the name of "Mrs. Burns" in the place of "Jack Dill," wherever therein mentioned; the motion was granted and the amendment made. The trial was then proceeded with, until the witness who testified as above, had finished her examination-in-chief and had been cross-examined, and two other witnesses for the plaintiffs had been examined-in-chief and cross-examined, when the defendant moved to amend his pleadings by pleading the Statute of Limitations; the plaintiffs objected, but the Court, (BROWN, J.,) overruled the objection and allowed the plea to be filed. The plaintiffs excepted.

*Second Exception.*—The defendant asked the Court to instruct the jury as follows:

1st. That the jury under the plea of Limitations filed in the cause, are not at liberty to take into consideration any evidence offered to sustain the second count in the declaration, and they are not at liberty to find for the plaintiffs on said count.

2nd. That the several words complained of in the mode and manner set forth in the first and third counts of the declaration, are not, if proved to have been spoken as alleged, sufficient of themselves to maintain this action, and therefore the verdict must be for the defendant.

This instruction the Court gave, and the plaintiffs excepted.

A verdict was rendered for the defendant under the instructions of the Court, and judgment was entered accordingly. The plaintiffs appealed.

---

Griffin and Wife *vs.* Moore.

---

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, ALVEY and ROBINSON, J.

*William Rowland* and *William H. S. Burgwyn*, for the appellants.

The plea of the Statute of Limitations is not a plea to the merits; the Acts of Assembly of this State, while providing for the greatest latitude in amendments, have expressly excluded pleas of the Statute of Limitations. *Code, Art.* 75, *sec.* 31.

The Court of Appeals has adjudged the plea of Limitations not to be a plea to the merits, and the universal practice has accordingly been never to permit it to be amended nor to be filed after the rule day. *Rules 6 and 8 of Baltimore City Court; Kunkel vs. Spooner*, 9 *Md.*, 472; *Lamott vs. McLaughlin*, 3 *H. & McH.*, 324; *Wall vs. Wall, &c.*, 2 *H. & G.*, 81; *Nelson vs. Bond*, 1 *Gill*, 218.

So also the plea of Limitations cannot be amended, though the amended plea is filed before the rule day has expired. *State vs. Green*, 4 *G. & J.*, 381.

The fact that the appellants were allowed to amend the second count of their declaration, did not give the appellee the right to file the plea of Limitations.

The privilege of amendment is given by Act of Assembly, that causes may be tried on their merits, and unless the amendment is material and changes the issue, it does not let in the plea of the Statute of Limitations. *Adams Ex. Co. vs. Trego*, 35 *Md.*, 61; *Borden Mining Co. vs. Barry*, 17 *Md.*, 431; *Farmers' Bank vs. Sprigg*, 11 *Md.*, 389; *Burtles vs. State*, 4 *Md.*, 273; *Wright vs. Hollinsworth's Lessee*, 1 *Peters*, 167.

The plea of the Statute of Limitations filed in this case purports to go to the whole declaration, whereas it can only be applicable to the second count. When a plea is only intended for a part of the declaration, the rule is, it must not cover the whole but ascertain the part to which it is applied. *Crain vs. Yates*, 2 *H. & G.*, 332.

It is actionable *per se* to say of a married woman in the public streets of a populous city, that she is a damned whore. His honor below considered this question settled to the contrary by the case of *Wagaman vs. Byers,* 17 *Md.,* 183.

It is submitted that the points of difference in the two cases are numerous. In the case of *Wilson vs. Robbins, Wright, N. P., (Ohio,)* 40, it was held not actionable to charge a man with adultery, though it is to charge a woman with adultery, because of the tendency of such a charge to exclude her from society. This case asserts that there is a difference in the odium attached to the slander where the charge of want of chastity is made of a woman, and when made of a man, and that consequently there is a difference in the legal consequences that attach to one making such a charge. The Legislature of Maryland has recognized this difference, and after the decision of the Court of Appeals, in the case of *Stanfield vs. Boyer,* 6 *H. & J.,* 248, (1824,) to the effect that words *tending* to charge an unmarried woman with fornication are not actionable, passed the Act of 1838, ch. 114, making all words spoken maliciously touching the character or reputation for chastity of a *femé sole,* slanderous.

1 *Hilliard on Torts,* 284, says: "With regard to the charge of want of chastity, it is now the prevailing doctrine that it is actionable to call a woman a whore." *Smith vs. Minor,* 1 *Coxe, (N. J.,)* 16 ; *Miller vs. Parish,* 8 *Pick.,* 384.

It seems to have been determined otherwise in New York, as in *Brooker vs. Coffin,* 5 *John.,* 188, though such a case falls within the rule for supporting such actions. It has always been the law in this commonwealth, and is so in New Hampshire and Connecticut. *Woodbury vs. Thompson,* 2 *N. H.,* 194 ; *Frisbie vs. Fowler,* 2 *Con.,* 707 ; *True vs. Plumley,* 36 *Maine,* 466.

But whatever may be the common law with reference to *unmarried* women—it has been repeatedly held in England

as well as in this country, that it is actionable to call a married *woman* a whore. 1 *Starkie on Slander*, 179; *Baldwin vs. Flower*, 3 *Mod.*, 120; *Saville vs. Kirby*, 10 *Mod.*, 385; *Ricket and Wife vs. Stanley*, 6 *Black.*, (*Ind.*,) 169; *Smith vs. Silence*, 4 *Iowa*, 322.

In the present case, the charge against the plaintiff's wife was not simply that of being a whore, but it was accompanied with the additional accusation of running away with the speaker's boy. *Gavell vs. Berked*, 1 *Mod.*, 22; *Dimock vs. Fawcett*, *Cro. Car.*, 393; *Hick vs. Joyce*, *Styles*, 394.

*William A. Stewart*, for the appellee.

The defendant seems to have mistaken the identity of the plaintiff, Mary Ann, and in conversation with parties, who knew his mistake, said that she was another person who had done him grievous wrong, and there being no special damage alleged, and no attempt to prove any, the words spoken not being sufficient of themselves to maintain the action, the Court properly instructed the jury that the plaintiffs could not recover under the first and third counts of the declaration. *Dorsey vs. Whipps*, 8 *Gill*, 457; *Terry vs. Bright*, 4 *Md.*, 430; *Wagaman vs. Byers*, 17 *Md.*, 183; *Jones vs. Hungerford*, 4 *G. & J.*, 402; *Sheely vs. Biggs*, 2 *H. & J.*, 363; *Stanfield vs. Boyer*, 6 *H. & J.*, 248.

The words contained in the second count are not actionable, and the Court properly allowed the defendant to file the plea of Limitations after the declaration had been so materially amended that no evidence could otherwise have been offered under it, and if it were not a matter of right, it was at least, a matter resting in the sound discretion of the Court, and after joinder of issue on said plea, if any irregularity as to filing the same, had existed, it was thereby waived. *Summers vs. Foote*, 28 *Miss.*, 671; *Shaw vs. Brown*, 42 *Miss.*, 309; *Mitchell vs. Sellman*, 5 *Md.*,

376 ; *Stockett vs. Sasscer,* 8 *Md.,* 374 ; *Gilchrist vs. Gilchrist's Ex.,* 44 *How. Pr. Reps.,* 317.

ROBINSON, J., delivered the opinion of the Court.

The appellants, plaintiffs below, sued the defendant, for slanderous words spoken by him, concerning the reputation for chastity of the plaintiff's wife.

The declaration contains three counts. The first and third charges the defendant with saying publicly, in June, 1874, of the plaintiff's wife, as she passed the defendant on the street, in the city of Baltimore, "There goes that damned whore, Jack Dill, who ran away with my boy."

The second count charges that the defendant, in the summer of 1872, sent a stranger to the house of the plaintiffs, saying to him at the time, that it was a "house of ill-fame, and kept by a whore named Mrs. Burns."

All the authorities agree in recognizing a distinction between words actionable *per se,* such as imply damage, and words not actionable unless special damage be proven ; but, the decisions in regard to the precise line which separates and distinguishes the one from the other are quite conflicting. While Courts have felt that the best interests of society require in many cases, that the slanderous words shall be considered as actionable *per se,* they have been careful to guard against encouraging an idle and vexatious spirit of litigation, by affording too great facility to this species of action.

Whatever may be the law elsewhere, it is well settled in this State, that in *an action like the one now under consideration,* in order to constitute words actionable *per se,* they must impute to the plaintiff, an indictable offence for which corporal punishment is the immediate penalty.

So early as the case of *Stanfield vs. Boyer,* 6 *H. & J.,* 248, it was held, that in the absence of proof of special damage, words tending to charge an unmarried woman

with fornication were not actionable, and so late as *Wagaman vs. Byers,* 17 *Md.,* 183, this Court decided it was not actionable *per se,* to charge a married woman with adultery, because the penalty for adultery in this State was a *pecuniary fine.*

After the decision in *Stanfield vs. Boyer,* an Act of Assembly was passed, making all words spoken maliciously, touching the character or reputation for chastity of a *féme sole* slanderous, but no Act has been passed in regard to words affecting the character and reputation of married women.   It was urged, however, that it was more odious to call a married woman "a whore," than to accuse her of adultery; but it is very clear that no language used in this connection, however foul, is actionable *per se,* unless it charges an offence which subjects the party to indictment and corporal punishment.   In the absence then of proof of special damage, we are of opinion that the plaintiffs are not entitled to recover under the first and third counts in the declaration.

In regard to the second count, the charges of keeping a bawdy house, imputes an offence involving not only moral turpitude, but one which subjects the party at common law to indictment and corporal punishment.   Whatever may have been the earlier decisions, it is now well settled in England, that it is actionable *per se,* to charge a person with keeping a bawdy house.   *Brayne vs. Cooper,* 5 *M. & W.,* 249 ; *Huckle vs. Reynolds,* 7 *Com. Bench, N. S.,* 114, 8 *Com. Bench,* 142 ; *Allsop vs. Allsop,* 5 *H. & N.,* 534 ; *Perkins vs. Scott,* 1 *H. & Colt.,* 153.

This brings us to the question, as to the right of the defendant to plead in this case, the Statute of Limitations.

The second count in the declaration, charged the defendant with speaking of the plaintiff's house, "as a house of ill-fame, kept by a whore named Jack Dill."

At the trial, the words proved were, "a house of ill-fame, kept by Mrs. Burns, a whore."   Thereupon, the

plaintiffs asked leave of the Court to amend the second count, by striking out the name of "Jack Dill," and inserting "Mrs. Burns." The amendment was made, and after the plaintiffs had examined three witnesses, all of whom had been cross-examined by the defendant, the latter asked and obtained leave to amend his pleadings, and to plead the Statute of Limitations.

The plea of limitations is not a plea to the merits, and the universal practice in this State has been, never to permit it to be amended nor to be filed after the rule day. *Kunkel vs. Spooner,* 9 *Md.,* 473; *Lamott vs. McLaughlin,* 3 *H. & McH.,* 324; *Wall vs. Wall,* 2 *H. & G.,* 81; *Nelson vs. Bond,* 1 *Gill,* 218.

Now, if it be conceded, that the amendment of the second count in the declaration was of such a character as to give the appellee the right to amend his pleadings and plead the Statute of Limitations, a question we are not to be understood as deciding, it is very clear that the plea was not filed in time. If the defendant had the right and intended to interpose this plea, it should have been filed immediately after the plaintiffs' amendment of the second count. Having failed to do this, and having proceeded with the trial with the plea already in the case, he must be considered as having waived the right to plead limitations, and it was too late to offer such a plea after the plaintiffs had examined their witnesses.

The judgment must therefore be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 24th June, 1875.)