# MORRIS FLAKS

## *vs.*

## J. BENJAMIN CLARK et al.

*Libel—Newspaper Publication—Headlines.*

A demurrer to a declaration for libel admits the publication, and that the words are false and malicious, but it does not admit that they are, in themselves, or as explained by the innuendoes, actionable, nor does it admit that they are, when read by themselves, or in connection with the inducement and *colloquium*, capable of the meaning ascribed to them in the innuendoes. p. 380

Whether the innuendoes are warranted by the article complained of, when read in connection with the inducement and *colloquium*, is a question of law for the court. p. 380

The office of an innuendo is to explain the words published and to give to them their true meaning, but it cannot introduce new matter, add to or enlarge the sense of those words, or impute to them a meaning not warranted by the publication, when taken alone or read in connection with the inducement and *colloquium*. p. 380

Since the libellous character of an article is to be determined from the whole article, the headlines of a newspaper article cannot alone be considered for this purpose. p. 382

A newspaper article to the effect that plaintiff, a theatre proprietor, refused to pay one of his actors all that the latter demanded, and that the latter then cut the theatre curtains, whereupon plaintiff had him arrested, does not impute to plaintiff a refusal or failure to pay his honest debts, or dishonesty or insolvency, or any mismanagement of his theatre calculated to injure or prejudice him or his business. pp. 382, 383

*Decided June 25th, 1923.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

Action by Morris Flaks against J. Benjamin Clark and C. Elliot Jones. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Borris M. Spector* and *J. Lewis Shocet,* for the appellant.

*Herbert L. Grymes,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the defendants on a demurrer to the amended declaration in an action for libel.

The declaration charges that the plaintiff is one of the owners "and engaged in the operation of and managing" a moving picture and vaudeville theatre on Pennsylvania Avenue, in the City of Baltimore, called the Lincoln Theatre, which "caters exclusively to colored patrons"; that the plaintiff has conducted said theatre for more than ten years, and has established a reputation for himself and for said theatre "of fair dealings and fair treatment of his employees and patrons"; that in said theatre the plaintiff also conducts a vaudeville show in which it is necessary to employ actors, who are supplied by theatrical agencies, and that in the management of said business he must have credit, and the film exchanges and actors must extend credit to him, without which he would be unable to conduct the business; that in order to properly conduct the theatre he must have the good will, confidence and trust of his actors, employees, business associates, patrons and theatrical agencies; that the de-

fendants are printers, publishers and editors of a news sheet called the Commercial Voice, which is published daily in the City of Baltimore, "excepting Sunday," and is distributed free of charge to the colored population of the city, and has a large circulation and a great number of readers and advertisers in Baltimore City; that notwithstanding the good standing and repute of the plaintiff and his theatre business, on or before the 21st of March, 1922, the defendants falsely and maliciously printed and published of and concerning the plaintiff and the business of the plaintiff, and of and concerning the management and conduct of his business and the Lincoln Theatre, and of and concerning the management of said theatre, the following article:

"*Lincoln Theatre Fails To Pay Actors.*

"When Morris Flaks (white), manager of the Lincoln Theatre, 934-936 Pennsylvania Avenue, failed to pay Joseph Hubbard, an actor, all that Hubbard alleged should have been paid him Saturday night, there was trouble.

"Hubbard took his pocket knife and is alleged to have cut all the curtains in sight.

"Flaks (white) had Hubbard arrested and filed a charge against him for maliciously destroying property."

The declaration further alleges that the words, "Lincoln Theatre fails to pay actors," were printed as the headline of said article in bold, distinctive type so as to attract the attention of the readers of said newspaper, and that it did attract the attention of the subscribers, readers and advertisers to the said article, "meaning thereby and intending and leading said subscribers, readers and advertisers of the Commercial Voice to believe that the plaintiff, Morris Flaks, failed to discharge his honest debts, and failed to pay his employees, and the said subscribers and readers so understood the said news article to mean. And further meaning thereby and intending to lead said subscribers * * * of the Commercial

Voice to believe that the said Lincoln Theatre failed to pay its employees, and that the readers and subscribers so understood the said" article. "And further meaning thereby and intending to lead said subscribers * * * of the Commercial Voice to believe that the plaintiff was dishonest in and about the management of his business"; that he was unable to pay his debts; that he was insolvent and did not merit the credit of his employees and of the persons with whom he dealt and from whom he received credit, and that the said subscribers and readers "so understood said news article to mean." And further meaning thereby and intending and leading the said subscribers, &c., "to believe that the plaintiff improperly managed and conducted his business, the Lincoln Theatre, in its dealings with its employees and others"; that the publication "was false and malicious and designed * * * to defame and injure the plaintiff in his business, * * * and his credit in the management" of the same, and to otherwise bring him into "public scorn, contumely and disrespect amongst his friends and neighbors, acquaintances, patrons, customers and his creditors and business associates, especially amongst the colored population of Baltimore City," &c., to his great injury.

The demurrer admits the publication by the defendants, and that the words are false and malicious, but it does not admit that they are, in themselves, or as explained by the innuendoes, actionable, nor does it admit that they are, when read by themselves, or in connection with the inducement and *colloquium,* capable of the meaning ascribed to them in the innuendoes, and whether the innuendoes are warranted by the article when read in connection with the inducement and *colloquium* is a question of law for the court. The office of an innuendo is to explain the words published and to give to them their true meaning, but it cannot introduce new matter, add to or enlarge the sense of those words, or impute to them a meaning not warranted by the publication, when taken alone or read in connection with the inducement and *collo-*

*quium. Avirett* v. *State,* 76 Md. 510; *Goldsborough* v. *Orem & Johnson,* 103 Md. 671; *Weeks* v. *News Pub. Co.,* 117 Md. 126.

There are no special damages alleged in the declaration, and the question to be determined is whether the publication declared on, when read in connection with the inducement, *colloquium* and innuendoes, is *per se* libellous. "A false and malicious printed or written publication which imputes conduct, or qualities tending to disparage, or degrade the plaintiff, or expose him to contempt, ridicule or public hatred, or prejudice his private character, or credit are libellous *per se.*" *Goldsborough* v. *Orem & Johnson, supra; Weeks* v. *News Pub. Co., supra; Stannard* v. *Wilcox & Gibbs,* 118 Md. 151.

Assuming that it would be libellous *per se* to falsely and maliciously publish of a man engaged in the business in which the plaintiff is alleged to have been engaged, and under the circumstances stated in the declaration, that he failed to discharge his debts and to pay his employees; or that the business in which he was engaged failed to pay its employees; or that he was dishonest; or that he was unable to pay his debts; or that he was insolvent; or that he managed his said business improperly, the meanings ascribed in the declaration to the publication complained of, the question remains whether either of those meanings are fairly inferable from the words published, when read in connection with the inducement and *colloquium.* If they are not then the innuendoes are bad, and the demurrer to the declaration was properly sustained. *Avirett* v. *State, supra; Weeks* v. *News Pub. Co., supra.*

We do not understand the appellant as contending that the words contained in the three paragraphs of the published article, below the headline, are libellous *per se,* for no one could ascribe to them the meaning that the plaintiff was dishonest; or that he failed to pay or was unable to pay his debts; or that he was insolvent, or that he managed his business improperly. But the appellant insists that the real

"sting" in the publication is contained in the headline. Even if we were to assume that the headline, if it alone had been published, when read in connection with the inducement and *colloquium*, would be susceptible of the meanings ascribed to the publication in the innuendoes, the rule is that the libellous character of the article must be determined from the *whole article* published. In *Newell on Slander and Libel* (3rd ed.), sec. 368, the author says: "The defendant is therefore entitled to have the whole of the alleged libel read as part of the plaintiff's case. And for the purpose of showing that what he wrote was no libel, and will not bear the construction which plaintiff seeks to put upon it, he may give in evidence any other passages in the same publication which plainly refer to the same matter, or which qualify or explain the pasage sued on." In *Gustin* v. *Evening Press Co.,* 172 Mich. 311, the court said: "To test its libellous quality, a publication must be considered as a whole," and in the case of *Weeks* v. *News Pub. Co., supra,* this Court, in affirming a judgment on demurrer in favor of the defendant, said: "Reading the article as a whole, and allowing the words employed their natural significance, we fail to find anything in the publication itself, or in the inducement and *colloquium,* to justify the meaning ascribed to it in the declaration."

Words may have different meanings according to the connection in which they are used, and their context may confine them to but a single and innocent construction. It would be a dangerous doctrine, and tend to promote grave injustice, to permit words to be withdrawn from others with which they are connected and used by the publisher, and then impute to them a meaning not warranted by the whole publication.

Now when the words in the headline in the article complained of are read in connection with the rest of the publication they can only mean that the plaintiff refused to pay one of his employees, or actors, all that the actor claimed was due him, and that the actor thereupon cut the curtains of

the plaintiff's theatre, for which the plaintiff had him arrested. This construction clearly does not impute to the plaintiff a refusal or failure to pay his *honest debts,* or dishonesty or insolvency, or any mismanagement of his theatre calculated to injure or prejudice him or his business. We must therefore hold that the alleged libellous matter does not warrant any of the meanings ascribed to it in the *innuendoes,* and that the demurrer to the declaration was properly sustained by the court below.

*Judgment affirmed, with costs.*