FREDERICK LEE COBOURN *v.* LEO M. MOORE ET AL.

[No. 89, October Term, 1929.]

*Decided January 15th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Ernest Volkart,* for the appellant.

*Thomas H. Robinson,* with whom was *Robert H. Archer* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This is an action of libel brought by Frederick Lee Co-bourn, the appellant, against Leo M. Moore and George T. Pennington, the appellees, in the Circuit Court for Harford County. It grew out of a newspaper controversy concerning the issues and candidates involved in the mayoralty election of the City of Havre de Grace held in 1929.

In his amended declaration, the appellant, after stating that he was an attorney at law in good standing, practicing his profession in the state and federal courts, that for a "number of years" he had been the city attorney for the

City of Havre de Grace, and had resigned that office in April, 1929, and that he enjoyed an unblemished reputation in the community where he resided and practiced his profession as an upright, respectable, law abiding and moral citizen of professional integrity and honesty in the practice of the law, alleged that the appellees falsely and maliciously composed, printed and published in the Democratic Ledger, a weekly newspaper published and circulated throughout the City of Havre de Grace and Harford County of and concerning him, the following "false, untrue, malicious, wicked, defamatory and wanton libel," to wit:

"To the Citizens of Havre de Grace—

"Recently a number of letters addressed to me and signed by Mr. Robert R. Lawder have appeared in a local paper. These letters were signed by Mr. Lawder, but they were actually prepared and written by Mr. Frederick L. Cobourn. Mr. Cobourn is simply using Mr. Lawder as his mouthpiece. The questions raised in these letters are too ridiculous and so evidently purely political bunk that they do not deserve an answer, but I have answered them as will be shown in the statement given below. Mr. Cobourn, who wrote Mr. Lawder's letters, was until recently City Attorney. If during my term any act of mine was wrong it was Mr. Cobourn's duty to advise me and the City Council about it. He always assured us we were within our rights.

"Here are some facts, not idle conjectures, which Mr. Cobourn's Lawder has not brought to the people's attention:

"1st. Mr. Cobourn's Lawder while a member of the legislature introduced the Lawder amendment to the City Charter raising the tax limit from $1.15 on the hundred dollars to $1.50 on the hundred dollars. Was Mr. Cobourn's Lawder then looking ahead to the time when he would be Mayor and when he would raise the tax rate to $1.50. Mr. Lawder thought a higher tax rate needed when he introduced his bill and if he is Mayor he will probably stick to his views.

"2nd. Mr. Cobourn's Lawder did not call to the attention of the voters the fees which Mr. Cobourn has charged and been paid by the city which are as follows according to the city books:

### Year 1924.

| | | |
|---|---|---:|
| Jan. | 8—F. L. Cobourn | $550.00 |
| Jan. | 23—F. L. Cobourn | 46.50 |
| Dec. | 1—F. L. Cobourn | 520.00 |
| June | 2—F. L. Cobourn | 2,350.00 |

### Year 1925.

| | | |
|---|---|---:|
| Jan. | 19—F. L. Cobourn | 25.00 |
| June | 1—F. L. Cobourn | 500.00 |
| July | 20—F. L. Cobourn | 53.00 |
| Oct. | 19—F. L. Cobourn | 500.00 |
| Oct. | 5—F. L. Cobourn | 1,000.00 |

### Year 1926.

| | | |
|---|---|---:|
| Jan. | 4—F. L. Cobourn | 900.00 |
| July | 19—F. L. Cobourn | 2,500.00 |
| Sept. | 6—F. L. Cobourn | 417.00 |

### Year 1927.

| | | |
|---|---|---:|
| March 7—F. L. Cobourn | | 150.00 |
| June | 6—F. L. Cobourn | 750.00 |
| Sept. 19—F. L. Cobourn | | 250.00 |

Total paid Cobourn in four years, $11,011.50

Average paid Cobourn per year.. 2,752.87

"This is approximately one-third of the total income of the City of Havre de Grace in a single year from taxes, and is nearly sufficient to pay in full the total floating debt of the City which would have been done, except for Mr. Lawder's Cobourn's high fees charged to the tax-payers. It is my intention because of these charges to secure a new City Attorney in the event I am re-elected. Mr. Cobourn evidently knew this when he brought out Mr. Lawder for Mayor against me. If Mr. Lawder is elected he will, no doubt, appoint Mr. Cobourn his main backer, as City Attorney, and Mr. Lawder may have need for his $1.50 tax rate to keep the City from going in debt. I shall under no circumstances appoint Mr. Cobourn City Attorney if I am elected. * * *"

He further alleged that these words were in fact understood by the readers of said newspaper to mean, and were intended by the appellees to be understood as meaning: "That the fees charged by the plaintiff to the City of Havre de Grace were unreasonably high and caused the City of Havre de Grace to have a floating indebtedness which would have been paid were it not for said alleged high charges made by the plaintiff, and meaning and intending to mean thereby, that the plaintiff, speaking of him individually and as an attorney at law, was a man unfit by reason of said alleged high charges to act as city attorney and thereby intending to bring the plaintiff into public scorn, contumely and disrespect among his neighbors, clients and acquaintances."

To that declaration the appellants demurred generally, and specially on the grounds: (1) that the words charged were not actionable *per se* and that no special damage was alleged, and (2) that the *colloquium* did not support the *innuendo*. The court sustained that demurrer, and the plaintiff declining to further amend, judgment for costs in favor of the defendants was entered, and from that judgment the plaintiff appealed.

The effect of the demurrer was to concede such matters of fact stated in the declaration as were "issuable and well pleaded" (1 *Poe, Pl. & Pr.,* sec. 705), and it is apparent from an examination of the declaration that no special damages were alleged, so that the only question presented by the appeal is whether in the absence of such an allegation the facts alleged in the declaration are sufficient to charge an actionable libel. *Newbold v. Bradstreet,* 57 Md. 38, 53; *Flaks v. Clark,* 143 Md. 381. The decision of that question depends upon whether there is anything in the alleged libelous matter to support the construction which the appellant placed upon the words "high fees" and "high charges," which is that they were intended by appellees to mean and were understood as meaning that appellant's fees and charges were "unreasonably high," and that he as an attorney at law was by reason of such "alleged high charges" a man unfit "to act as city attorney." The publication itself is apparently of a recrim-

inatory nature and purports to be a reply to some article which the author attributed to Mr. Cobourn, and its essential averments of fact are that Mr. Cobourn was for four years city attorney for the City of Havre de Grace, that during that period he collected fees aggregating $11,011.50, an average of $2,752.87 *per annum,* that such charges were "high," that the author of the article if elected mayor would not appoint Mr. Cobourn "city attorney" but that his opponent Lawder, if elected, "no doubt would." Assuming that these allegations were all false in fact and maliciously made, the only one of them which could possibly had been regarded as libelous was that Cobourn had charged the municipality "high fees" for his services as city attorney. The allegations that he was city attorney and that he was paid for his services as such were certainly not libelous, nor, in view of the relations existing between Cobourn and the author of the article, as indicated in the publication, did his statement that because of these high charges he would appoint a new city attorney reflect adversely upon Cobourn. There is no apparent reason why such charges, even if false, should have degraded, humiliated, or injured the appellant, or have reflected upon his personal or professional integrity, or have brought him into public ridicule, hatred, scorn, contumely, or disrespect. Nor are there in the *narr.* any *colloquia* which could give to the word "high" as used in the alleged libelous publication a meaning different from that ordinarily attached to it. So that the final question is whether it is libelous *per se* to falsely and maliciously publish of and concerning a lawyer that he made and collected high charges for his professional services. "High" as applied to fees, charges, or prices, is a word of relative import signifying dear, expensive, or greater than some norm which the person using the word had in mind, having necessarily no odious or sinister significance, and ordinarily associated with variations in grade or quality, or a departure from some standard prevailing at other times or at other places. There may be circumstances under which it could be given the significance attached to it by the appellant, that is that it meant "unusually high," but no such circum-

stances are stated in the declaration, and the word standing alone and used in connection with charges for the professional services of a lawyer has no such meaning.

The charges for such services must of necessity vary with the skill and standing of the lawyer, the novelty and difficulty of the questions submitted to him, the likely effect of the service in depriving the lawyer of opportunities of employment in other professional matters, and other considerations (*A. B. A. Canons of Ethics,* sec. 12), and to say that the fees for such services are high or low may, and ordinarily does, mean nothing more than that they are greater or less than some other lawyer might have charged, or at most that they are greater or less than the customary fees of the bar for like services. But unless given special color and significance by peculiar and abnormal conditions, the word is not synonymous with "exorbitant" or "unreasonable," as appellant contends. To say of one that he is a "high priced lawyer," while it may be a tribute to his skill and standing at the bar, actual or assumed, is in itself no more of a reflection upon his personal or professional character or integrity than saying that a merchant or skilled craftsman charged high prices necessarily, implies anything more than that because of the known excellence of his work or the integrity of his character he is able to obtain more for his wares or services than others. The word "unreasonable" does not occur in the publication, nor is there any reference in it to appellant's professional skill or to his personal or professional integrity, unless such an inference can be drawn from the mere statement that his fees or charges for his professional services were high. It is not alleged in the article that they were fixed as the result of collusion or fraud, and indeed such a statement would have reflected as much on one of the defendants as on the appellant, for it is implied that one of them was mayor while Cobourn was city attorney. Certainly no inference of improper conduct on the appellant's part could be drawn from the fact that a member of the legislature introduced a bill raising the limit of the municipal tax rate, nor did the fact, if it was a fact, that the aggregate of appellant's fees

was one-third of the annual income of the municipality, or that it was nearly sufficient to pay its floating debt, have any possible relevancy or significance. If the city employed him to render it needed legal service, it was obliged to pay him such compensation as was fixed by the contract of employment, or, in the absence of any such contract, what such service was reasonably worth, and the ratio of the amount thus determined to the annual income of the city or to its debts fixed or floating was wholly immaterial.

Nor did the statement that the author of the publication, if elected mayor, would not reappoint the appellant because of "these high charges," necessarily carry the implication that Cobourn was unfit for the position. For under the circumstance, and in connection with the context, it cannot be assumed that the author meant anything more than that he would employ a cheaper lawyer to do the city's legal work. It is alleged in the publication that the author is a candidate for re-election as mayor of Havre de Grace, which is one way of saying that he was at the time an incumbent of that office; it is further stated that during his term of office it was Cobourn's duty to have advised the author of the article and the city council if any act of the mayor was "wrong," so that Cobourn must have had an official position under him, and, since Cobourn resigned as city attorney and the author states that if elected he will appoint a "new city attorney," it may at least be inferred that Cobourn was city attorney while the author of the article was mayor, long after the charges of which he complains were a matter of record on the city's books. Under such circumstances the mayor could not have meant to charge that he without protest permitted an unfit person to retain an important position in the city government, for that would have amounted to an admission that he himself had defaulted in his duty as the executive head of the city.

So that there is nothing in the four corners of the publication itself to give to the phrases "high fees" and "high charges" any meaning which could reflect injuriously upon

the private character, or the professional skill or integrity, of the appellant, or support the innuendo that the words used were intended to mean or were understood as meaning that his fees were unreasonable or that he was unfit to hold the office of city attorney. And if any facts existed which would have given those phrases as used in the publication that meaning, they should have been set forth in a *colloquium. Newell on Slander & Libel,* page 752; *Flaks v. Clark, supra; Nolan v. Traber,* 49 Md. 469; *Jones v. Hungerford,* 4 G. & J. 407; *Peterson v. Sentman,* 37 Md. 153, *et seq.* For, as stated in *Newbold v. Bradstreet,* 57 Md. 50, "The general rule doubtless is, that the ordinary popular meaning or sense of the languge alleged to be libelous is to be taken to be the meaning of the publisher; but a foundation may be laid for showing another or a different meaning." *Peterson v. Sentman, supra; Newell on Slander and Libel,* secs. 748, 749, 926. But in the absence of some antecedent statement to support it, an innuendo cannot broaden or expand the natural and ordinary meaning of the alleged defamatory words. *Newell on Slander & Libel,* secs. 751, 752; *Peterson v. Sentman, supra.*

In this case there is no antecedent statement which will support the inference that by using the words "high charges" and "high fees" the defendants intended to be understood as meaning either that the appellant's charges were unreasonably high, a conclusion stated in what may have been intended as a *colloquium,* or that he was an unfit person to hold the office of city attorney of Havre de Grace, as charged in the innuendo, and since the natural and ordinary meaning of the words used did not have that import, they did not constitute an actionable libel unless they injured appellant in some special manner. 37 *C. J.* 22, 23. And since there is no allegation of special damage, the declaration was bad, and the demurrer to it properly sustained.

The case of *Bowie v. Evening News,* 148 Md. 574, upon which the appellant relied, is not in point. The question here is whether a word in common use, which as ordinarily used

and understood has an innocent meaning, should be given an unusual and unaccustomed meaning, and construed as conveying an accusation of bad faith and unfitness. In the *Bowie* case there was no doubt that the alleged defamatory words as ordinarily used and understood, so far as they applied to him, did tend to expose the person of and concerning whom they were published to public scorn and contempt, but the question was whether they were intended to apply to Bowie.

In view of the conclusion we have reached, it has not been necessary to discuss the appellee's theory that the publication was privileged because it was merely a part of a newspaper controversy concerning the relative merits of candidates for the office of mayor of Havre de Grace, initiated by the appellant. But it is not apparent how in any event that defense could be set up, because the demurrer concedes that the allegations in the publication of the facts upon which the contention rests are false, and the declaration itself contains no other reference to them. So that there are in the record no facts to support that contention.

For the reasons stated the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*