## SANTOS v. GALLIN et al.

United States District Court
S. D. New York.

Nov. 3, 1952.

Henry Creidy, New York City, for plaintiff.

Aaron D. Kaufman, New York City, for defendants.

SUGARMAN, District Judge.

Plaintiff sues defendants for libel. This is a motion "for an order dismissing the complaint herein upon the grounds that it fails to state a cause of action". It will be deemed one to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed.Rules Civ.Proc. rule 12(b)(6), 28 U.S.C.A.

For the purposes of such a motion, the well pleaded material allegations of the complaint are taken as admitted. Moore's Federal Practice, 2d Ed., par. 12.08, Vol. II, p. 2244.

The complaint alleges that the plaintiff is a citizen of the Philippine Republic; that the defendants are all citizens of the State of New York; that the matter in controversy exceeds three thousand dollars; that the plaintiff, a major in the Philippine Army, is the officer in charge of the Philippine Procurement Mission in New York; that the defendants are engaged in the business of supplying uniforms and uniform material; that prior to the incident, which is the subject matter of the suit, plaintiff was an officer in good standing in the Philippine Army, enjoying a reputation of the highest integrity in his assignment and not suspected of "any unsavory conduct or practice"; that the defendants con-

trived and intended to deprive plaintiff of the respect, confidence, and estate peculiarly essential to his office and of his good name, reputation and esteem among his fellow officers and to bring him into disrepute by falsely and wrongfully circulating a letter as follows:

"Paul G. Gallin Company
Uniforms—Accessories—Insignia
"729 Broadway
New York 3, New York
Tel. Orchard 4–1400
November 26, 1951

"Captain Alfredo D. Dayot
Officer of the Treasurer
Philippine Military Academy
Loakan, Baguio, Philippines

"Dear Captain Dayot:

"Undoubtedly you were surprised to receive our cable suggesting that you delay the procurement by Major Santo. We would, therefore, like to take this opportunity to explain the reason for this message.

"A few days ago a woolen jobber in this city telephoned us advising that he was to get an order from the Academy through Major Santos for 50,000 yards of West Point grey all wool material. We knew nothing about this order and did not even receive a request for a quotation for same until the following day. What surprised us in this incident was that whereas one man was already sure of having the order, other firms had not even been notified. Furthermore, this woolen jobber went so far as to say that if we did not work along with him we would not get anything. He also said that he had been shown the cable (a supposedly confidential directive) sent from the Academy directly to Major Santos specifying that the order was to be given to our firm. We of course, would have nothing to do with such an unsavory proposal. This whole matter is most puzzling to us. The Academy, of course has a right to request quotations from other suppliers. As a matter of fact, we welcome this as an opportunity for you to prove for yourselves that our merchandise cannot be duplicated. Enclosed you will find the request for quotation which was sent to us after the telephone conversation previously mentioned. As you can see, there are no specifications, making it impossible for any concern to bid intelligently. The Academy can only suffer as a result.

"We, of course, have even gone out of our way at times to supply the Academy with the best. Of course you have the right to check other sources and suppliers. However, we feel you will agree that there is something bizarre about this entire matter, and we believe it our duty to inform you of this so that you can guide yourselves accordingly.

"We request that we hear from you on this matter.

"Very truly yours,
Paul G. Gallin Company
(sgd) Paul G. Gallin

"P.S. Our Mr. Samuel Gallin is presently out of the country, so I am writing in his stead.

"P. G. G.";

that the foregoing letter was meant to convey that the plaintiff was guilty of unethical, illegal, unsavory and criminal conduct and of conduct unbecoming a public and army officer; that the letter was prepared with malice and knowledge of its falsity; and that the plaintiff was damaged to the extent of fifty thousand dollars.

■ Much of the defendants' memorandum, in support of their motion to dismiss the complaint, quotes Seelman on "The Law of Libel and Slander in the State of New York" and Gately on "Law and Practice of Libel and Slander in a Civil Action". Suffice it to say that these quotations are inapposite because they, as the cases relied upon by the defendants, Shankroff v. La Guardia, Sup., 61 N.Y.S.2d 839, affirmed 247 App.Div. 785, 288 N.Y.S. 737, appeal denied 272 N.Y. 679 and Kuhne v. Ahlers, 45 Misc. 454, 92 N.Y.S. 41, deal with *slander* as distinguished from libel. While an oral statement made indiscriminately, in anger, under provocation, and without premeditation, might not, under certain conditions, amount to actionable slander the same words, when written, might well support an action for libel. The reasons for the distinction are adequately

treated in Seelman, supra, paragraphs 3 and 4, pages 1 and 2.

■ Of greater substance is the defendants' contention that, absent an allegation of special damage, the complaint must fail under O'Connell v. Press Pub. Co., 214 N. Y. 352, 108 N.E. 556. Notwithstanding Seelman's critical analysis of the O'Connell decision (paragraph 30 et seq., page 34 et seq.) it apparently is still the law of New York and must be followed by this court. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Admittedly, the complaint fails to allege special damages. As appears by the plaintiff's deposition, he actually suffered none. However, if the complaint alleges a libel *per se*, it states an actionable claim without pleading special damages. Seelman, supra, par. 403, p. 396; 53 C.J.S., Libel and Slander, § 170d, p. 271.

■■ It is libellous *per se*, to write of an officer charged with the duty of procuring supplies for the army, that he entered into an arrangement to award a contract to a vendor without first obtaining competitive bids; that after entering into that arrangement he requested bids on inadequate specifications from that vendor's competitors; and that he would prevent any competitor who refused to fall in with the "unsavory proposal" from getting anything. It is also libellous *per se* to write that such army officer disobeyed a confidential directive received by him in connection with his procurement duties and disclosed, to an unauthorized person, the contents thereof.

■ The intent of the defendants' letter is clear upon its face. It sought to advise plaintiff's superiors of an "unsavory", "puzzling" and "bizarre" proposal (that would cause detriment to the Academy) conveyed to defendants by one of their competitors in league with the plaintiff. Its intent was to impair plaintiff's status as an officer commissioned to procure supplies for the Philippine Army.

"It is libelous to impute to anyone holding an office that he has been guilty of improper conduct in that office, or has been actuated by wicked, cor-

rupt or selfish motives, or is incompetent for the post which he holds * * *." Odgers on Libel and Slander, 6th Ed., p. 23

This rule was specifically stated to be the law of New York in Rooney v. Feinstein, Sup., 76 N.Y.S.2d 77, affirmed 274 App.Div. 1004, 85 N.Y.S.2d 516.

The motion to dismiss the complaint for failure to state a claim is denied. Settle order.