POLLITT *v.* BRUSH-MOORE NEWS-
PAPERS, INC.

[No. 39, September Term, 1957.]

(Two Appeals In One Record)

*Decided November 25, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Richard M. Pollitt* and *John B. Robins,* with whom were *Robins & Robins* and *Vaughn E. Richardson* on the brief, for appellant.

*Charles E. Hearne, Jr.,* with whom were *Hearne, Fox & Bailey* and *William H. Vodrey, Jr.,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

Here are two appeals by Jesse M. Pollitt, Sheriff of Wicomico County, plaintiff, appellant, from judgments for costs entered for the Brush-Moore Newspapers, Inc., defendant, appellee, as a result of the sustaining of general demurrers to the plaintiff's declarations in two cases for libel.

For the purposes of this case, the declaration in case No. 2133 alleges that the defendant falsely and maliciously printed an auditors' report about the plaintiff in one of its newspapers called the "Salisbury Times". The newspaper article carried the following words as here summarized. Better records are urged for the sheriff's office. Auditors think the Sheriff of Wicomico County should keep better records. They said so in their report of the examination of the records of the sheriff and jail. In their report new legislation and some changes in the sheriff's methods are recommended. "It is. also noted that in one instance, there is an apparent non-compliance with Maryland law by his failure to maintain a record of the fees and charges to be collected." The recommended. legislation is that the sheriff return all legal papers to the court of their origin within a prescribed time. The report "Urges New Law". The sheriff's office would function better if such a law were passed. "Incompleteness of the sheriff's. office records concerning fees and collection costs were noted in the report." The report of the auditors was qualified be-

cause the sheriff accounts only for collections and maintains no record of any fees and charges to be collected by him. The Maryland law requires that the sheriff shall maintain "in such books as may be required and furnished him, an official record of the fees and charges to be collected by him. Whenever a sheriff shall retire from office leaving uncollected any costs, fees or money lawfully payable to him, it shall be his successor's duty to collect and pay over the same, * * *. Previous reports recommended that such a book be kept and it was repeated in this latest examination. * * * *Concerning other records of the sheriff's office, the reports said: 'We examined the procedure for booking prisoners at the jail and found the record incomplete.'* " (Italics supplied.) A plain paper book with hand-placed pencil ruling had been used. Entries were made mostly in pencil. "A printed book with pre-numbered pages made in ink was recommended by the auditors." Also the recommendation of the installation of a machine to write receipts was made. The declaration further alleged: "Last August, The Times carried a story on a purported erasure on the jail log which erased the name of a county employee booked on a minor traffic charge. A fictitious name was substituted on the record. Since then, the sheriff, Jesse M. Pollitt, has withheld the jail book from reporters of the Times and barred its reporters access to the jail." The declaration further stated that the words "We have examined the procedure for booking prisoners at the jail and found the record incomplete," were false and malicious and libelous *per se* in that they imputed conduct tending to degrade the plaintiff and to lead the public to believe that the plaintiff was guilty of a misdemeanor under Maryland law, which requires the sheriff to keep records which the newspaper article said he did not keep. It is further alleged that the plaintiff never violated the law. In fact, the auditors' report, from which the defendant purports to be quoting, did not contain the statement published in the Salisbury Times, but in fact the auditors' report stated: "We examined the procedure for booking prisoners at the jail and found the record to be complete." The entire newspaper article containing the auditors' report was written in such a manner as

to create a false, inaccurate and misleading impression in the minds of the public by taking certain portions therefrom out of the context and by carefully omitting other portions, all of which was designed to and intended to degrade the plaintiff and expose him to contempt and ridicule and to prejudice his reputation as a private citizen and as a public official.

Plaintiff relies on the italicized words above quoted from the newspaper article as charging him with the commission of a crime. The defendant contends that the alleged defamatory words are privileged. It relies on *Powell v. American T. & L. Co.,* 131 Md. 539, 102 A. 747. It is a well known principle of law in this State that a qualified privilege cannot be raised on demurrer. *Walker v. D'Alesandro,* 212 Md. 163, 169, 129 A. 2d 148, and cases there cited. Defendant admits in its brief that the above italicized word "incomplete" was in error and that the word in the auditors' report was "complete". The demurrer admits the publication by the defendant and that the words are false and malicious. *Flaks v. Clark,* 143 Md. 377, 122 A. 383; *Cobourn v. Moore,* 158 Md. 358, 148 A. 546. As to the claim that all reports of the proceedings of superior tribunals and legislative bodies are privileged, we see no reason why an auditors' report should be in this classification.

Plaintiff contends that the words in the aforesaid declaration are libelous *per se*. With this contention we agree. It is true, as contended by the defendant, that in an action for slander, in order to constitute words actionable *per se,* they must impute to the plaintiff an indictable offense for which corporal punishment is the immediate penalty. *Griffin v. Moore,* 43 Md. 246.

Chapter 233, Acts of 1953, relating to Wicomico County, provides in part:

> "It shall be the duty of the Sheriff to keep a book at the county jail in which *he shall keep a correct and full statement or schedule of all prisoners committed to his custody,* showing by what authority, the offense charged, the time when received and the time of discharge, which statement or schedule, to-

gether with all books, papers and commitments kept by him pertaining to prisoners in the jail shall at all times be open to the inspection of the County Commissioners, State's Attorney and Grand Jury, and should the Sheriff neglect or refuse to keep said book or comply with any of the duties which he is hereby required to perform, he shall be guilty of a misdemeanor and subject to indictment, and upon conviction thereof he shall be fined a sum not exceeding One Hundred Dollars ($100.00)." (Italics supplied.)

Even in slander it is not necessary to set out the offense supposed to be imputed with the same precision as required in an indictment. If it is done in such language, as in ordinary "lay conversation" will impute the crime, or be understood to impute guilt, that will be sufficient. *Blumhardt v. Rohr*, 70 Md. 328, 17 A. 266. In *Snyder v. Fulton*, 34 Md. 128, a newspaper published an assertion that the plaintiff, a news boy who sold papers on a train between Washington and Baltimore, "takes every occasion to insult Republican passengers". Also, that he "appears to have been in collusion with the ruffians" and that "on approaching the city he went around (in the cars) to take a vote of the passengers, the object being evidently to spot the Republicans, that the assailants might know who were their friends and who their opponents." The court stated (p. 134) that these words were libelous *per se* and said: "To make defamatory words actionable *per se,* when they are written or published, it is not necessary that they should charge a party with a crime or offense which would subject him to indictment or ignominious punishment. There is a broad and just distinction, in this respect, between spoken words and words written or published." In *Foley v. Hoffman,* 188 Md. 273, 284, 52 A. 2d 476, it is said: "The scope of libel is wider than that of slander * * *."

The majority rule in other jurisdictions seems to be that charging one with any crime, regardless of the degree of punishment, is libelous *per se*. In *Webb v. Beavan,* 11

Q.B.D. 609, Baron Pollock said: "The expression 'indictable offence' seems to have crept into the text-books, but I think the passages in Comyn's Digest are conclusive to shew that words which impute any criminal offence are actional *per se*." See also 116 *Am. St. Rep.* 802, 813; *Thorley v. Kerry,* 4 Taunt 355, 128 Eng. Rep. 367; *Wilson v. Savino,* 10 N. J. 11, 89 A. 2d 399; *Ray v. Citizen-News Co.,* 14 Cal. App. 2d 6, 57 P. 2d 527; *Jones v. Brinkley,* 174 N. C. 23, 93 S. E. 372; *Davis v. Macon Telegraph Pub. Co.,* 93 Ga. App. 633, 92 S. E. 2d 619. As to the minority view see *Proto v. Bridgeport Herald Corp.,* 136 Conn. 557, 72 A. 2d 820; *M. Rosenberg & Sons v. Craft,* 182 Va. 512, 29 S. E. 2d 375. We therefore conclude that for the purpose of the demurrer the declaration alleges the commission of a crime and is libelous *per se.*

*Restatement of Torts,* Chapter 24, Section 569d, in discussing the fact that libelous and slanderous imputations of crime are distinguished, states in part:

> "There is also a substantial residuum of criminal imputations which constitute libel although they would not support an action for slander * * *. Thus, * * * it is immaterial that the crime charged is not an indictable offense or that it is not punishable by imprisonment or death. It is enough that the crime is of a character such as to harm the reputation of the person charged therewith in the eyes of a substantial minority of respectable persons. On the other hand, there are some crimes so trivial that an imputation thereof is not defamatory at all and can, therefore, support an action neither for slander nor libel. Thus, the violations of many traffic and other municipal ordinances, purely regulatory in character, is not regarded as either socially or morally reprehensible, especially when unintentional or unavoidable. Such a charge of crime has no tendency adversely to affect reputation and is not, therefore, defamatory."

See also 33 *American Jurisprudence,* page 44. The crime

charged here appears to be more than a mere traffic violation, and one that would harm the reputation of the plaintiff.

Plaintiff further contends that the newspaper article was libelous *per se* for the further reason that the words therein impute to the plaintiff conduct or characteristics incompatible with the proper conduct of his office. With this contention we agree. In *Restatement of Torts,* Chapter 24, Section 569e, after discussing words necessary to constitute slander *per se,* it is said:

> "There is, however, a residuum of charges which are actionable as libels under the rule stated in this Section although they would be insufficient to support an action for slander \* \* \*. Thus, to constitute a libel it is enough that the defamatory utterances impute any misconduct whatever in the conduct of the other's calling. The charge of a single act of misconduct may be sufficient to support an action for libel, although such a charge does not necessarily imply that want of skill, learning or competence which the public reasonably demands of those who carry on a trade, business or profession and thus would not be actionable *per se* as slander \* \* \*."

The question seems to depend upon whether the words charged the plaintiff with conduct which should make him unfit to faithfully and correctly discharge the duties of his office. *Stannard v. Wilcox & Gibbs,* 118 Md. 151, 84 A. 335. See also *Negley v. Farrow,* 60 Md. 158. The defendant relies strongly on the case of *Kilgour v. Evening Star Co.,* 96 Md. 16, 23, 53 A. 716. In that case this Court found that the charge published against the State's Attorney was not libelous *per se* because the reasonable inference from the newspaper article was that, after investigation, the State's Attorney deemed an inquest unnecessary and he would therefore decline to recommend the payment of the expenses of the inquest, the State's Attorney having no power or duty to regulate the expenses of a coroner's inquest. In that case, this Court stated the general rule that:

> " 'Words spoken of a person in his office, trade,

profession, business or means of getting a livelihood, which tend to expose him to the hazard of losing his office, or which charge him with fraud, indirect dealings or incapacity and thereby tend to injure him in his trade, profession or business, are actionable without proof of special damage, even though such words if spoken or written of an ordinary person, might not be actionable *per se.*' 18 *Am. & Eng. Ency. of Law,* p. 942 (2nd ed.) ; *Wilson v. Cottman,* 65 Md. 197.

" 'The words must go so far as to impute to him some incapacity or lack of due qualification to fill the position, or some positive past misconduct which will injuriously affect him in it.' *Sillars v. Collier,* 151 Mass. 50; *Newell on Defamation, Slander and Libel,* ch. 8, p. 178; *Townsend, Libel and Slander,* secs. 188, 189."

In *Bowie v. Evening News,* 148 Md. 569, 129 A. 797, a newspaper article, taken as a whole and including the head-lines, stated that the sheriff of Anne Arundel County, in a charge to the grand jury, was given a stinging rebuke by the trial judge who declared that the increase in bootlegging was a disgrace to the county and that a "clean up of con-ditions was in order". The article stated that the sheriff was charged with being connected in some way with the in-crease in bootlegging and with permitting attempts to tamper with a state's witness in those cases. This Court there said: "The plaintiff was a public official, enjoying his office as a result of public confidence and trust * * * [ ;] the natural and likely impression which it [the news article] would convey to the average and ordinary reader would be that the court had rebuked Bowie [the plaintiff] because his conduct had shown him unfit to perform the duties of his office * * *". The *Kilgour* case was distinguished because in that case there was no imputation upon the motives or capacity of the State's Attorney as State's Attorney. This Court also said in the *Bowie* case: "But here there is no question that the charges are sufficient to impute unfitness to Bowie, * * *." In *Foley*

*v. Hoffman, supra,* the defendant, Foley, the county treasurer, published remarks about the plaintiff, Hoffman, who had been defendant's chief clerk, which this Court held imputed to the plaintiff, not a particular act of carelessness or carelessness in some particular minor respect, but general incapacity or lack of due qualification to fill the position of chief clerk, and that he was justified in removing him from his staff on the grounds of inefficiency and neglect. It was there held that the demurrer was properly overruled because the words were libelous *per se.* The article in the *Foley* case was certainly more libelous than the one before us here. However, here the plaintiff is charged with not only failing to keep a complete record of prisoners at the jail, but with non-compliance with the law on account of incompleteness of records concerning fees and collection costs. See also *Dicken v. Shepherd,* 22 Md. 399; *Blumhardt v. Rohr, supra; Powell v. American T. & L. Co., supra; Howe v. Thompson,* 35 S. D. 1, 150 N. W. 301; *Walsh v. Miami Herald Publishing Co.* (Fla., 1955), 80 So. 2d 669; *Cross v. Gannett Publishing Co.,* 151 Me. 491, 121 A. 2d 355; *Santos v. Gallin,* 108 F. Supp. 831 (S. D. N. Y.).

There are, of course, cases which hold that the statements did not relate to plaintiff's performance of his office, employment or business. *Newbold v. Bradstreet,* 57 Md. 38; *Stannard v. Wilcox & Gibbs, supra; Flaks v. Clark, supra; Cobourn v. Moore, supra; Gough v. Tribune-Journal Co.,* 73 Idaho 173, 249 P. 2d 192. In *Hendrix v. Mobile Register,* 202 Ala. 616, 81 So. 558, it was held that the offense charged was a single act or omission and therefore not libelous.

Plaintiff also claims that the printed newspaper article tended to degrade and expose him to contempt and ridicule. With this contention we agree. In *Goldsborough v. Orem & Johnson,* 103 Md. 671, 64 A. 36, the declaration alleged that the defendant falsely published of the plaintiff and of the majority of the members of the vestry of the church that they did " 'relentlessly turn their back upon legal and moral obligation to the detriment of a rector (meaning the said Reverend Thomas Carter Page) who suffered himself to become debilitated while plodding along the path of duty to his

congregation (meaning the congregation of the said Christ Protestant Episcopal Church of Cambridge),' and the defendants meant thereby that the said four members of said vestry, including the plaintiff, voting for the said resolution as aforesaid, and in particular the plaintiff, had relentlessly violated legal and moral obligations." On demurrer it was held that this publication was libelous *per se* and such words charged the plaintiff with conduct calculated to make him the object of scorn and contempt of all honorable men. For the same reasons that the article here before us charged the plaintiff with conduct incompatible with the proper conduct of his office, it also charged him with conduct tending to degrade and expose him to contempt and ridicule.

There is nothing in the declarations in either of the cases before us here to indicate that the plaintiff is a candidate for office. Therefore, cases dealing with libel against candidates for office are not pertinent here.

The declaration in case No. 2140 charged that defendant published in the Salisbury Times an article which contained the following words: "DISCHARGED JAIL TURNKEY CAMPAIGNS FOR GOP SHERIFF. Emerson T. Dykes, Parsonsburg, who was discharged as turnkey at the Wicomico county jail on Nov. 11, announced today he was on a two-year campaign to elect a Republican sheriff. Mr. Dykes is not a candidate for the job. He said that his discharge came after Sheriff Jesse M. Pollitt engaged in an altercation with the family of an out-of-state prisoner, the prisoner's attorney, Walter Webster, and himself. Mr. Dykes said that after the exchange of words, the family refused to post the collateral with Sheriff Pollitt but gave it to him and the prisoner was released. He said he was sent home by the sheriff on the same day and had been replaced by Arthur W. Oliphant, Zion Road. Election for sheriff, and other county offices, is in 1958." The declaration further alleged that the above article was incorrect, false and malicious. The defendant well knew or by reasonable care could have ascertained that said words were false. The plaintiff for a number of years has been sheriff of Wicomico County, and that said publication was designed to and intended to degrade the plaintiff or expose

him to contempt and ridicule and to prejudice his reputation as a private citizen and as a public official.

Plaintiff in this case does not claim that there is anything libelous in the article about discharging Mr. Dykes. However, he claims that, by stating that he, as sheriff, engaged in an altercation with the family of an out-of-state prisoner, the prisoner's attorney, and others, he was charged with lack of qualities expected of a sheriff. The declaration does not indicate the nature of altercation. The sheriff may have been justified in such altercation. Therefore, we see nothing in this article that imputes to the sheriff conduct incompatible with the proper conduct of his office or that tended to degrade him or expose him to public contempt and ridicule.

We are of opinion that the demurrer should have been overruled in No. 2133 and was properly sustained in No. 2140.

*Judgment in No. 2133, reversed, with costs, and case remanded for further proceedings. Judgment in No. 2140 affirmed, with costs.*