## THOMPSON *v.* UPTON

[No. 71, September Term, 1958.]

434

*Decided December 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Frank P. Flury* for the appellant.

*William L. Kahler* for the appellee.

Prescott, J., delivered the opinion of the Court.

The sole question involved in this appeal is whether the following letter is libelous *per se*:

"Hon. C. R. Davis, Mayor
City of College Park, Md.
Dear Mr. Davis:

"Enclosed under protest is my check for $2.00 in payment of fee per your statement of 8 Nov. received the morning of 12 Nov.

"The alleged overtime parking violation occurred last month while shopping at the Safeway Store, 7417 Baltimore Ave. The parking meter would not register above 12 min. no matter how many pennies were put in, the handle refusing to turn after the first one had been accepted. On leaving store I found ticket on my car. I took this to 4809 Calvert Road and explained situation but the clerk said I would have to take it up with the policeman. I returned to Safeway just as another car was leaving with a ticket on it. After waiting all the time I could spare without any police showing up I placed a bag, with ticket attached, over the meter and left message stating meter was N. G. I know that other meters near this store are defective because my daughter reported trying three before she found one that would work.

"As nearly as I can determine, your tin-horn cop sits in nearby concealment sipping beer until he sees a car parked over 12 min. at a defective meter (and who can buy a week's supply of groceries in 12 min?), then sneaks over, places a ticket on the car and then hustles back to his beer. I can smell skunk perfume a long way, and this definitely smells like a racket, whether to raise money for the police,

or to divert trade to shopping center across Baltimore Blvd. In either case, the situation stinks.

"Now that this matter has been brought to your attention, I am sure you will take disciplinary action and have the meters repaired or removed. I have had some acquaintance in the past with politicians, including a close relative who was once mayor of a small city, in another state, and much later a Supreme Court Justice in that state. I know that if even such a petty racket had existed during his mayoralty I would have read about it in the opposition press. I know that you will want to clean up this situation so as not to give the slightest leverage to your political opponents now or in the future.

"As you know what the score is now, I am sure that you will return my check. However, until such refund is forthcoming, we will trade no more anywhere in College Park, nor will we until honest meters are installed. The Safeway there, which has reasonable prices and gives courteous service, has been a favorite of my wife's since the war years when my daughters attended the University. Presumably the overtime parking racket is not worked on the students or the meters would have been smashed to bits long ago.

"Very truly yours,
/s/ FREDERICK P. UPTON
"cc to Mgr. Safeway Store; Safeway Main Office; Albrecht's Pharmacy; Suburban Trust Co.; Dr. Elkins, U. of Md."

The declaration filed by the plaintiff-appellant contains three counts. Each count alleges that the above letter was "falsely and maliciously printed and published." The first count incorporates the contents of the letter above and couples it with an inscription made by the appellee on a traffic ticket which he mailed to the office of College Park City. It will be unnecessary to set forth this inscription as we think the letter was libellous *per se* by itself. No question is raised

as to the first count being duplicitous. The second and third counts set forth the letter in its entirety and add a colloquium and innuendo.

There were no special damages alleged in any of the three counts of the declaration to which a demurrer was sustained without leave to amend, and the appellant has stipulated that no such damages were sustained or claimed by him.

It is conceded that if the letter be not libellous *per se,* the declaration had to allege special damages in order to withstand a demurrer. It is also conceded that the question of whether or not a publication is libellous *per se* and, therefore, actionable at law may be determined by the court upon demurrer, since the demurrer admits only the publication, but not that it is libellous. 1 Poe, *Pleading and Practice,* sec. 178.

We have so recently had occasion to pass upon the legal principles involved herein, *Pollitt v. Brush-Moore, Etc., Inc.,* 214 Md. 570, 136 A. 2d 573, that it will be unnecessary to unduly elaborate upon them. It has been repeatedly stated that the scope of libel is wider than that of slander. This Court stated in *Bowie v. Evening News,* 148 Md. 569, 574, 129 A. 797, that it had been said that there is no definition of the term "libel" sufficiently comprehensive to include all cases. We shall not attempt to do what has baffled the Courts for these many years, namely, to compose an all-inclusive definition thereof. However, libel includes any unprivileged (*i.e.* a publication not having an absolute privilege), false and malicious publication which by printing, writing, signs or pictures tends to expose a person to public scorn, hatred, contempt or ridicule, *Foley v. Hoffman,* 188 Md. 273, 284, 52 A. 2d 476; and also embraced therein is any such publication that relates to a person's office, trade, business or employment, if the publication imputes to him some incapacity or lack of due qualifications to fill the position, or some positive past misconduct which will injuriously affect him in it. *Foley v. Hoffman, supra; Pollitt v. Brush-Moore, Etc., Inc., supra,* at p. 577.

We think the letter in this case offends in both of the above respects: it tends to expose the appellant to public scorn, hatred, contempt and ridicule, and it charges him with con-

duct which would make him unfit to discharge, faithfully and correctly, his duties as a policeman. ·The letter was mailed to other important citizens in addition to the Mayor. While the appellee argues that the letter should, and by the average person would, be treated in a humorous vein, the charges contained therein, when levelled at a law-enforcement officer, are, to us, of a grave and serious character. To write to a policeman's superior that "your tin-horn cop sits in nearby *concealment sipping beer* until he sees a car parked over 12 min. at a *defective* meter * * * then *sneaks* over, places a ticket on the car and then hustles back to his *beer.* I can smell *skunk perfume* a long way, and this definitely smells like a *racket,* whether *to raise money for the police, or to divert trade to shopping center* across Baltimore Blvd. In either case, the situation *stinks,*" (italics ours), imputes to a police officer qualities that would render him ˙completely unfit to serve in such a capacity and warrant his discharge, as well as to subject him to public scorn and ridicule. Not only does it accuse the appellant of official misconduct in drinking alcoholic beverages when on duty, but it charges corruption in either raising money for the police or diverting trade.

The word "racket," when used as it was here, is particularly opprobrious and aspersive. It connotes the raising of money by illegal means or the terrorizing of legitimate business in order to raise money illegally. To impute such conduct to a police officer, whose duty it is to uphold the majesty of the law, is a charge of such gravity that, if true, it would disqualify him for the employment in which he was engaged. It, also, places him in a position which holds him up to hatred and contempt. *Sweet v. Ken, Inc.,* 7 N. Y. S. 2d 737, 739, aff. 12 N. Y. S. 2d 240; 53 C. J. S., *Libel and Slander,* p. 65. We hold that the letter was libellous *per se,* and the demurrer should have been overruled.

As stated above, the second and third counts contain innuendoes. If a publication *requires* an innuendo to show that it is libellous, it is not a libel *per se;* for to be libellous *per se,* the publication must, on its face and without the aid of extrinsic facts, be recognized as injurious. *Sweet v. Ken, Inc.,*

*supra; Woolston v. Montana Free Press,* 2 P. 2d 1020 (Mont.) ; 53 C. J. S., *Libel and Slander,* p. 64 ; also sec. 162 b (2). Cf. *Cobourn v. Moore,* 158 Md. 358, 148 A. 546. However, as indicated above, we do not think the letter needed an innuendo to show that it was injurious; consequently, the innuendoes in the second and third counts may be treated as surplusage.

The appellee attempts to raise the question of qualified privilege in his brief, but this is a defense that is unavailable on demurrer. *Walker v. D'Alesandro,* 212 Md. 163, 169, 129 A. 2d 148; *Pollitt v. Brush-Moore, Etc., Inc., supra.*

> *Judgment reversed, and the case remanded, the appellee to pay the costs.*