Octavio POLANCO, M.D.,
Plaintiff–Appellant,

v.

Charles FAGER, M.D.,
Defendant–Appellee.

No. 88–3599.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1989.
Decided Sept. 19, 1989.

David Alan Levin (Andrew E. Vernick, Digges, Wharton & Levin, Annapolis, Md., on brief), for plaintiff-appellant.

Gerard J. Emig (Gleason & Flynn, Chartered, Rockville, Md., on brief), for defendant-appellee.

Before ERVIN, Chief Judge, and WINTER and CHAPMAN, Circuit Judges.

HARRISON L. WINTER, Circuit Judge:

Defendant, Dr. Charles Fager, amplified the testimony he had given in the course of a proceeding before a Health Claims Arbitration Panel by a letter to the presiding officer of that panel. Dr. Octavio Polanco thereafter brought suit against Fager, claiming that Fager's letter defamed him by stating that he had performed an operation because of "egotism and greed." The district court gave summary judgment for Fager, ruling that Fager was protected by the qualified privilege of fair comment and that Fager had not abused the privilege.

Polanco appeals. We reverse and remand for further proceedings.

I.

As a result of a complaint filed with the Maryland Health Claims Arbitration Office by Barbara Cady, one of Dr. Polanco's patients, a Health Claims Arbitration Panel conducted a hearing on the question of whether Dr. Polanco had performed an unnecessary spinal fusion operation on Ms. Cady which caused her permanent physical injury. Dr. Fager, a physician from Boston, was called as an expert witness in support of Ms. Cady's claim.

Dr. Fager testified that Dr. Polanco violated the applicable standard of care in treating Ms. Cady and that the spinal fusion proceeding was unnecessary due to the absence of confirming clinical and radiological findings. Dr. Fager was then interrogated by the presiding officer as to why Dr. Polanco had performed the operation. The following is his testimony in this regard:

Q. .... If you had stood before Dr. Polanco, either alongside of him or over his shoulder and watched him, why do you think he did it?

A. That's a question that is difficult for me to answer, and I can't answer it. I don't feel—I don't understand. Because it really violates a number of the principles that I believe in and that I taught him.

Q. All of the time that you have been reviewing this case, you are still not able to, in your own mind, come to the conclusion of why Dr. Polanco performed such a procedure?

A. No, I think that is a question that you would have to ask Dr. Polanco in terms of what I've said today. I don't feel I can say that. I see a lot of surgery that's been done over the years, Mr. Chernikoff [the presiding officer], that I think is not justifiable. But I can't say what's behind the surgeons [sic] mind in doing it.

Q. Doctor, with all due respect, I'm sorry, I can't accept your—I can't go further.

A. Well, I don't want to say what I think may be behind it, because I don't

think that's fair. That's not part of this hearing. I consider it a departure from acceptable standards.

Q. Doctor, you were brought here as an expert witness. Mr. Horowitz has brought you here and I think that you could answer the question that is posed to you.

A. Yes, but Mr. Chernikoff, I can't answer what Dr. Polanco's motivation is. I don't see how I can tell you what his motivation is.

Q. Doctor, I'll leave that question with you.

A. Yes.

Despite his reluctance at the hearing to express any view about Dr. Polanco's motivation, Dr. Fager, upon his return to Boston, wrote a letter to Robert L. Chernikoff, Esq., the chairman of the hearing panel, stating in pertinent part:

Your "philosophical" question has not been put to me in an open public forum and you must have been aware of my reluctance, largely because I had concern for my own immunity in that surrounding.

Your comparison of our professions was accurate in that we both have conservative and aggressive practitioners. However, far more to the point is that you have your "ambulance chasers" and we have our physicians & surgeons who engage in excessive treatments & unnecessary surgery. The motives are much the same—egotism and *greed*!! Somehow I did not feel I could give this "philosophical" answer.

I thought you conducted a fair hearing which was equitable to both sides.

Suit in this case was filed originally in state court but removed to federal district court because of diversity of citizenship and the amount in controversy. Dr. Fager thereafter filed a motion for summary judgment contending that (1) he had absolute immunity as a witness in an administrative proceeding, and (2) he had a qualified privilege for fair comment which he did not exceed. The district court gave summary judgment to Dr. Fager. Although the court ruled that he did not have absolute immunity as a witness since the judicial proceeding did not extend to gratuitous letter writing undertaken after he ceased being a witness, it did recognize that he had qualified immunity which had not been exceeded.

The opinion of the district court was somewhat enigmatic. It deemed Dr. Fager's statement "an expression of opinion or fair comment." Its conclusion was based upon the subsidiary findings that all of the facts on which Dr. Fager based his opinion were established at the administrative hearing, and that his letter was a philosophical statement that doctors who perform unnecessary surgery are like ambulance chasers and are motivated by egotism and greed. At the same time, the district court apparently found that the comment was not made with respect to Dr. Polanco, but was "a comment about the professions of law and medicine," although the district court conceded that the recipient of the letter, Mr. Chernikoff, could believe that Dr. Fager equated Dr. Polanco with the category of doctors who perform unnecessary surgery for egotism and greed.

Having concluded that the doctrine of fair comment was applicable, the district court considered whether that qualified privilege had been exceeded. It concluded that Dr. Polanco's evidence was legally insufficient to show that the letter was written "to injure and solely by ill will" so as to obviate application of the privilege.

## II.

Before us Dr. Polanco argues that the doctrine of fair comment is inapplicable and, even if applicable, that there was evidence of malice and ill will on the part of Dr. Fager, so as to remove the shield of qualified immunity. Dr. Fager does not seek to sustain his summary judgment on the ground that he was entitled to absolute immunity as a witness in a judicial proceeding.

The issues before us on appeal require us to consider in the summary judgment context—in which a party may prevail only if the material facts are undisputed and he is

entitled to judgment as a matter of law *—(1) whether Dr. Fager's statement could be defamatory of Dr. Polanco, (2) whether, if defamatory, Dr. Fager's statement is entitled to the qualified privilege of fair comment, and (3) if the privilege is otherwise applicable, whether it was abused and thereby lost. We consider these issues in order.

### III.

Unlike the district court, we do not think that it can be said that, beyond dispute, Dr. Fager's statement was about "the professions of law and medicine," and not specifically about Dr. Polanco. The context in which the statement was made, in the light of Dr. Fager's testimony at the administrative hearing, would inevitably lead an informed recipient to understand that Dr. Fager was speaking of Dr. Polanco.

■ We do not doubt that what was said, if neither true nor protected by privilege, was, under Maryland law applicable to this diversity action, actionable defamation. *See Embrey v. Holly,* 48 Md. App. 571, 429 A.2d 251 (1981); *Metromedia v. Hillman,* 285 Md. 161, 400 A.2d 1117 (1979); *Thompson v. Upton,* 218 Md. 433, 146 A.2d 880 (1958). Succinctly stated, we think that an assertion that a doctor performed surgery on a patient for "egotism and greed" exposes the doctor to public scorn, hatred, contempt or ridicule. *See Thompson, supra.* We think further that the statement in question was published to Mr. Chernikoff, and, in our view, that the recipient would reasonably understand the statement to be about Dr. Polanco and to be of a defamatory nature. Although publication was very limited, Dr. Polanco has tendered proof of emotional and mental injury. We are brought then to a consideration of whether the statement was privileged.

■ The Maryland law of qualified privilege of fair comment is found in *A.B. Abell Company v. Kirby,* 227 Md. 267, 176 A.2d 340 (1962), and *Kapiloff v. Dunn,* 27 Md. App. 514, 343 A.2d 251 (1975). Both cases state the rule that "to sustain fair comment, facts which are set out in the publication must be truly stated (if they are unprivileged), and that such a fact which is not set out must both be true and be so referred to in the publication as to be either recognizable or be made identifiable, and be easily accessible." *Kirby,* 176 A.2d at 348. Where the two cases differ is that *Kirby* holds that the facts either disclosed or otherwise known to the recipient of the statement must be true, while *Kapiloff* holds that the decision in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), requires a modification of the *Kirby* rule to extend the privilege to opinions based on false fact so long as the publisher was not guilty of malice in publication. The rationale of requiring a disclosure of the facts in order for the privilege to apply is succinctly stated in *Kapiloff:* "[w]hen such commentary is *not* based upon stated facts or upon facts otherwise known or readily available to the general public, it is treated as a factual statement." 343 A.2d at 264. In such a case, the comment becomes an allegation of fact for which there is no defense except absolute privilege or truth. *Kirby,* 176 A.2d at 347–48.

The letter written by Dr. Fager contains no statements of fact to support his comment that Dr. Polanco was motivated by egotism and greed. Although we have carefully examined Dr. Fager's entire testimony before the Health Claims Arbitration Panel over which Mr. Chernikoff presided, we can find no disclosure of fact which would support an expression of opinion that Dr. Polanco performed an unnecessary operation because of "egotism." Under Maryland law, when the factual basis for the comment is neither disclosed nor already known to the recipient of the letter, the comment itself must be treated as a statement of fact, which, as we have already said, we think was defamatory absent proof of its truthfulness.

Although perhaps a close question, the charge that Dr. Polanco operated for greed is a privileged comment under Maryland

---

* As a corollary to this rule, we resolve competing inferences that may be drawn from the evidence against Dr. Fager, the moving party.

law. Dr. Fager did testify at length that the operation was unnecessary because of the total absence of clinical findings to warrant it. Although his views were quite positive, he did admit that a minority of neurosurgeons would have undertaken the operation based upon a medical theory to which he did not subscribe, but one which has been given credence in some medical circles. If we accept the view that the operation was in fact medically unnecessary, that premise, coupled with the generally understood fact that doctors practice medicine for fees, can support the opinion that the doctor performing the operation did so for gain and not for the well-being and cure of his patient.

We therefore conclude that the doctrine of fair comment would immunize Dr. Fager for liability for having written that Dr. Polanco performed an operation for "greed," but not for the written comment that he did so for "egotism."

### IV.

We are not persuaded that Dr. Polanco has adduced sufficient evidence to show that Dr. Fager abused the privilege of fair comment in charging that the former performed an operation for greed so as to be entitled to summary judgment on this issue. While it is true that Dr. Fager —who, incidentally, was one of Dr. Polanco's teachers—testified that this operation was unnecessary and that he had testified or was prepared to testify similarly in other proceedings in other jurisdictions, and although Dr. Fager testified that he did not know what motivated Dr. Polanco's performing the operation and yet offered a ready extrajudicial explanation, we do not think that this constitutes malice as a matter of law. It, of course, may be some evidence of malice, but that issue is one of fact for the jury. *See Hughley v. McDermott,* 72 Md.App. 391, 530 A.2d 13 (1987); *Leese v. Baltimore County,* 64 Md.App. 442, 497 A.2d 159 (1985).

REVERSED AND REMANDED.